[No. 10197.    Department One.    May 27, 1914.]

## In re BOYER AVENUE, SEATTLE.[1]

MUNICIPAL CORPORATIONS—ASSESSMENTS—DISTRICTS — BENEFITS—
APPORTIONMENT—APPEAL—REVIEW.  The action of eminent domain
commissioners in fixing the limits of an improvement district and in
apportioning the cost according to benefits and determining what
part of the cost shall be borne by the city will not be disturbed on
appeal unless they acted arbitrarily or upon a fundamentally wrong
basis.

SAME—ASSESSMENTS—APPORTIONMENT OF COSTS—GENERAL BENE-
FITS TO CITY—EVIDENCE—SUFFICIENCY.  Where the city did not de-
termine what part of the cost of an improvement should be borne by
the city, but left the question to the eminent domain commissioners,
the cost of an arterial street, which was made seventy-five feet wide
to accommodate the travel between the large sections of the city,
when a street of the usual width, sixty-six feet, would have conferred
upon abutting property every local benefit possible, according to the
testimony of all the witnesses, the cost of condemning the additional
nine feet required for the street as an arterial highway should be
apportioned to the city; and in failing to charge any part of the cost
against the city, the eminent domain commissioners proceeded upon
a fundamentally wrong basis.

Appeal from a judgment of the superior court for King
county, Dykeman, J., entered October 19, 1911, confirming
an assessment roll, upon appeal from the eminent domain
commissioners.    Modified.

*Carkeek, McDonald & Kapp,* for appellants.

*James E. Bradford* and *Howard M. Findley,* for respond-
ent.

ELLIS, J.—This is an appeal from a judgment confirming
an assessment roll, made by a board of eminent domain com-
missioners to pay the cost incurred in appropriating by con-
demnation private property for widening and establishing
a section of Boyer avenue, in the city of Seattle.    Boyer
avenue, as it formerly existed, was, at either end of the sec-

[1]Reported in 141 Pac. 58.

tion opened by this proceeding, an established street seventy-five feet wide. The ordinance establishing this connecting section and providing for the condemnation through appellants' land did not direct that the cost and expense be paid wholly by special assessment upon the property benefited, but left the question whether any part of it should be borne by the general fund of the city and, if so, what part, to the determination of the eminent domain commissioners. At the time the proceedings were instituted, the lands of the appellants were unplatted lands, occupying a narrow valley between, and practically connecting, the Lake Union basin and the Lake Washington basin, and extending in a direction northwest by southeast and lying generally south of an irregular line formed by East Howe street and East Lynn street, and north of the irregular north line of Interlaken Park. This depression is bounded on both sides by steep ridges, East Howe and East Lynn streets being about the brow of the northerly ridge and the park boundary running along the break of the abruptly rising ground on the southerly side of the depression.

As grounds of attack upon the assessment, it is asserted (1) that property not benefited was included in the district, and that property equally benefited with any included was excluded from the district; (2) that the street confers no benefit upon the appellants' property; and (3) that all or a part of the cost and expense should be assessed against the city.

At the outset, we find it necessary to revert to a general principle which we have often announced and to which we have consistently adhered as applicable alike to every objection here raised. The action of the commissioners in fixing the limits of the district, in determining what property is, in fact, benefited, in apportioning the cost of the improvement according to benefits, and, where that matter is referred to them, in determining what part, if any, of that cost should be borne by the city, will not be disturbed by the court on mere differences of opinion, nor in the absence of a clear showing that the action of the commissioners was fraud-

ulent, arbitrary, or based upon a fundamentally wrong theory.

"The commissioners being appointed for the very purpose of doing these things, their action is entitled to the same presumption which attends official action in other cases, and is conclusive in the absence of mistake, fraud or arbitrary discrimination amounting to an abuse of discretion." *Spokane v. Fonnell*, 75 Wash. 417, 135 Pac. 211.

See, also, *In re Elliott Avenue*, 74 Wash. 184, 133 Pac. 8; *Spokane v. Miles*, 72 Wash. 571, 131 Pac. 206; *Spokane v. Curtiss*, 66 Wash. 555, 120 Pac. 70; *In re Fifth Avenue*, 66 Wash. 327, 119 Pac. 852; *In re Twelfth Avenue*, 66 Wash. 97, 119 Pac. 5; *In re Jackson Street*, 62 Wash. 432, 113 Pac. 1112; *In re Pine Street*, 57 Wash. 178, 106 Pac. 755; *In re Third, Fourth & Fifth Avenues*, 55 Wash. 519, 104 Pac. 799; *Seattle v. Sylvester-Cowen Inv. Co.*, 55 Wash. 659, 104 Pac. 1121; *In re Elliott Avenue & Milwaukee Street*, 54 Wash. 297, 103 Pac. 20; *In re Seattle*, 50 Wash. 402, 97 Pac. 444; *Seattle v. Felt*, 50 Wash. 323, 97 Pac. 226; *In re Western Avenue*, 47 Wash. 42, 91 Pac. 548; *In re Harvard Avenue North, Seattle*, 47 Wash. 535, 92 Pac. 410; *In re Seattle*, 46 Wash. 63, 89 Pac. 156.

Applying these principles as announced and applied to similar questions in all of the foregoing cases, it is clear that the first two objections of the appellants cannot be sustained. One of the commissioners testified very fully as to the considerations which entered into their deliberations in the formation of the district and in casting the assessment. We shall not review this testimony in this connection further than to say that it showed a thorough familiarity with the locality, the topography of the district, the reasonable use which the street would serve and the property which that use would benefit and enhance in value. It is admitted that none of the abutting property belonging to the appellants was platted when these proceedings were instituted. It is admitted that some street would have to be located through this property

whenever platted, regardless of this condemnation, in order to give access to other parts of the city from lots in such plat. It is clear that any street so platted would be primarily a benefit to this property, and to make a practicable grade would, of necessity, run through the valley, either on this line or on some line parallel to the line of this street, and that any such street would either be a direct extension of Boyer avenue as theretofore existing, and thus coincide with the street here established, or would curve into that street at the southeast. It is thus manifest that the street as established, or some other street in general similarly located, would primarily serve this property and confer upon it the same benefits usually conferred by giving to property access not theretofore possessed. It is true that some of the appellants' witnesses testified that the street, as located, was a detriment rather than a benefit to appellants' property. This was a matter incapable of demonstration, one way or the other, for the simple reason that questions of benefit, like other phases of value, rest largely in opinion.

"The questions suggested by the objections cited, it will be noticed, are principally questions of fact, and questions, moreover, which are incapable of solution with mathematical exactness, and into which the judgment and opinion of the individual or individuals who undertake their solution must largely enter. It is not difficult, therefore, to find persons who will take issue with the judgment of the persons who make the assessment, and who will testify to the incorrectness of the assessment as returned. The record in this case discloses a variety of opinions, but we do not think the evidence in favor of the objections overbalances the evidence in support of the return." *In re Seattle*, 46 Wash. 63, 89 Pac. 156.

As to the limits of the district, it is evident from what we have said touching its topographical features, that what property other than that directly abutting upon the improvement would be benefited by the improvement, and to what extent, was peculiarly a matter of opinion and upon which no intelligent opinion could be formed otherwise than by an ac-

curate knowledge of the locality. This the commissioners had. Again, there was much variety of opinion expressed as to what should have been the limits of the district, but a careful reading of the entire testimony leads to the conviction that the district, as formed, probably as fairly included that property, and only that property, which can be said to be specially benefited as any that might have been devised.

"It is always difficult to determine the exact dividing line where the special benefits cease and general benefits begin in this class of cases. The greatest special benefit, of course, attaches to the lots immediately abutting upon the street. But some special benefits necessarily attach to the lots and blocks distant therefrom, diminishing as the distance increases. The line must be drawn somewhere, and we think it is not unreasonably drawn at the center of the block, as was done in this case. The same principle is true at the termination of the district, lengthwise as laterally. There can be no exactness in the determination of such questions, and they must, therefore, be left to the best judgment of the persons authorized to fix the boundaries of the district." *In re Pine Street*, 57 Wash. 178, 106 Pac. 755.

There was no such showing in the evidence as should be permitted to overcome the *prima facie* correctness which must be accorded to the limits of the district, and the distribution of the cost upon the property in the district, as determined by the commissioners.

The third objection presents a much more difficult question, but it also must be decided by the same general principle hereinbefore announced and supported by the numerous decisions cited. We find it unnecessary to decide whether the city, by the ordinance, might have provided that the whole cost and expense of this condemnation should be paid wholly by special assessments upon the property benefited. It will suffice to say that the city did not do so. It left that matter to the commissioners. The case is thus distinguished from *Spokane v. Curtiss*, 66 Wash. 555, 120 Pac. 70, and *Powell v. Walla Walla*, 64 Wash. 582, 117 Pac. 389. The appellants contend that all or a large part of the cost of this improvement

should have been assessed to the general fund of the city, because of the fact that Boyer avenue is an arterial highway of the city, and this condemnation proceeding being for the purpose of making that avenue a continuous highway, was largely, if not wholly, for the benefit of the city as such rather than for the benefit of the appellants' property.

As we have already seen, however, whatever the character of this street in its relation to the city at large, it was a special benefit to the property included in the district, so that it is clear that some part of the cost should be borne by that property, regardless of any benefit to the city as such. The evidence of the various witnesses, much of which was given with reference to a topographical map which is in evidence, shows that the business section of the city, along the shores and terraces arising from Elliott Bay, is separated from the residential slopes of Lake Washington by an almost continuous line of hills running in a general northerly and southerly direction, rising in places to several hundred feet in height and offering no break available for intercommunication and traffic between two large sections of the city at a grade of less than five per cent to eight and a half per cent, except along the line followed by Boyer avenue generally, including that part concerned in this proceeding, and streets connecting therewith, which gives a grade for the most part throughout approximating three per cent. The testimony of practically every witness who testified was to the effect that every local benefit which could be conferred upon the appellants' property and other properties in this district would be furnished by a street sixty-six feet wide, which is the ordinary width of streets which may be called purely local as distinguished from arterial. While it is true that any street which might have been laid out through the appellants' property, and through this narrow valley in which that property is located, in order to secure the greatest benefit to the property in the district, must either be a continuation in a direct line of Boyer avenue or curve into that street at the southeast, it

is also true that the added width above the ordinary width of sixty-six feet was made necessary by reason of this street being a continuation of Boyer avenue, and to conform to the width of that street in the part already established. The eminent domain commissioner who testified admitted that a street sixty-six feet wide would have been sufficient to meet every purpose of the appellants' property and every purpose of the street as a local improvement. He said, "Yes sir, and that is exactly the sized street we had in mind when we fixed the benefits to the property abutting on the street."

The appellants offered in evidence a map showing Boyer avenue as a part of the system of arterial highways which had been proposed by a certain committee known as the "Municipal Plans Commission." This was excluded on the ground that these plans had never been adopted by a vote of the people and might never be adopted. While this map was in no sense binding upon the city, it was admissible as having some tendency to show that a representative body of the people of the city regarded Boyer avenue as one of the arterial highways of the city. Of course, it alone would have been wholly insufficient to establish that fact; but the fact that this street is seventy-five feet wide, that the grade is a much easier grade than the grade of any other street connecting the two parts of the city to which we have referred, and the fact that it is largely used as an arterial highway and is, by the very nature of its location, better suited for that use than any other route between those two sections, were established by a decided preponderance of the evidence. In fact, the only eminent domain commissioner who testified stands alone in the assertion that the street here in question is purely local in its character. All the other witnesses, one of them a former eminent domain commissioner, were thoroughly acquainted with this locality and with the general street scheme of the city of Seattle, and testified that this street is, in fact, considered one of the arterial highways of the city.

From the entire evidence, we are satisfied that the cost of the nine feet condemned, in excess of the sixty-six feet reasonably necessary for local purposes, should have been assessed to the general fund. *In re Leary Avenue*, 77 Wash. 399, 138 Pac. 8. The situation is entirely different in this respect from that presented in *Spokane v. Fonnell, supra.* There it appeared from the evidence that the only tangible benefit to the city as such was to be found in the increased value of its taxable property, a mere reflex on the whole city of the special benefits to property owned by certain of its citizens. Here, however, the benefit derived from improvement by the city as a whole was a special benefit, a benefit resulting from a special use of which the street in question was peculiarly capable and to accommodate which use was the only conceivable reason for making the street seventy-five feet rather than sixty-six feet wide. We are clear that, in making this assessment, the commissioners, in their failure to charge any part of the cost of the improvement against the city, proceeded upon a fundamentally wrong basis in assuming that this street is not in its nature and design an arterial highway. Though the finding of the commissioners comes to us with the added weight of the trial court's confirmation, the evidence is also here and we deem it compelling to the contrary. Since nine feet of the width of the street was clearly added by reason of the arterial character of the highway, the cost of that nine feet should be borne by the city. It is equal to exactly twelve per cent of the entire width of the street. We therefore conclude that this assessment roll should be modified so as to reduce the assessment against the property of the appellants by twelve per cent of its amount.

The cause is remanded with direction so to modify the roll.

CROW, C. J., MAIN, CHADWICK, and GOSE, JJ., concur.