[No. 12471.  *En Banc.*  March 18, 1916.]

THE CITY OF VANCOUVER, *Respondent*, v. CORPORATION OF THE CATHOLIC BISHOP OF NISQUALLY, *Appellant.*[1]

MUNICIPAL CORPORATIONS — IMPROVEMENTS — ASSESSMENTS—BENEFITS—REVIEW BY COURTS. The confirmation of an assessment by eminent domain commissioners will not be disturbed on appeal for mere difference of opinion as to the amount of the benefits conferred, nor unless the record discloses that the commissioners acted arbitrarily or upon a fundamentally wrong basis.

SAME—ASSESSMENTS—BENEFITS—EVIDENCE. The fact that an improvement extending a street changes a lot from a lot in the center of a two-block area to a corner lot suggests a sufficient reason for assessing benefits at $312.50, while an opposite corner lot not so changed was assessed at only $103.

SAME—ASSESSMENTS—BENEFITS—USE OF PROPERTY. The fact that property assessed for benefits was used as church property is not material in determining the question of benefits conferred by the improvement.

HOLCOMB, CHADWICK, and FULLERTON, JJ., dissent.

Appeal from an order of the superior court for Clarke county, Back, J., entered May 18, 1914, confirming an assessment roll for a public improvement, after a hearing before the court. Affirmed.

[1]Reported in 156 Pac. 383.

*M. M. Connor* and *Geo. O. Davis*, for appellant.

*Geo. B. Simpson*, for respondent.

MORRIS, C. J.—This is one of those cases, oft before the courts, wherein the property owner is seeking relief from an assessment made by a board of eminent domain commissioners in local improvement districts, upon the contention that such assessment is in excess of benefits, arbitrary and inequitable.  The appeal is taken from the order confirming the assessment roll.  As is usual in these cases, there is a difference of opinion as to the amount of benefit conferred by the local improvement, but courts will not concern themselves with differences of opinion as to the actual benefit.  The final decision of such questions must rest somewhere, and it is the settled policy of the courts to rest it with that body upon which the law has conferred the determination, save in those cases where the record discloses that such body has acted arbitrarily or upon a fundamentally wrong basis.  *Viegle v. Spokane*, 78 Wash. 359, 139 Pac. 33; *In re Boyer Avenue*, 79 Wash. 664, 141 Pac. 58.

Appellant's property, of an approximate area of two city blocks, was used for church purposes, and the improvement consisted of extending a street north and south through its center.  The assessment was levied upon the appellant's property and upon the blocks to the north and south.  An illustration from the record will indicate the basis upon which appellant supports its contention that the assessment upon its property was arbitrary and fundamentally wrong.  One of appellant's lots cornering on the extended street was assessed at $312.50, while the lot opposite appellant's lot and somewhat larger was assessed at only $103.  Looking at the plat, a reason suggests itself for this difference which may or may not have been the one moving the commissioners to fix the assessment at these sums.  The lot opposite, on the northeast corner of Columbia and Thirteenth streets,

was benefited only to the extent of extending Columbia street south through appellant's property; it already was a corner lot having north, east and west approaches. Its frontage was in no manner changed or interfered with. It was given only an additional approach from the south, while appellant's lot, prior to the improvement, had a street frontage of sixty-six feet on Thirteenth street, and was located in the center of the block facing Columbia street to the north. By extending Columbia street to the south, it was made a corner lot, its north frontage being reduced to thirty-three feet, and it was given an added west frontage of one hundred feet. We assume it has received full compensation for the thirty-three feet taken, and the only question before the commissioners was the benefit to the remainder. This change from a lot in the center of a two-block area to a corner lot with a frontage of one hundred feet on the street extension was a factor to take into consideration in determining the benefit.

Had the entire assessment been levied upon appellant's property, then the case would be similar to *In re Eighth Avenue Northwest*, 77 Wash. 570, 138 Pac. 10, but such is not the fact. Neither does it appear that the commissioners charged back against the remainder of appellant's property the amount of the condemnation award made for the property taken and then assessed the remainder for the full benefits in addition, as was done in *In re Ninth Avenue West*, 76 Wash. 401, 136 Pac. 488. The assessment was distributed over appellant's property and upon the blocks to the north and south, and we can gather from the record nothing, save that there was a sharp difference of opinion as to the extent of the benefit. It must be borne in mind that it is not the amount of the assessment that should influence either the lower court or this court in disturbing it. The test is the benefit conferred. In determining the extent of the benefit to a given property by a municipal im-

provement, it is not unusual to find wide difference of opinion; but mere difference of opinion between witnesses as to the amount of benefits conferred does not of itself establish such a case as calls for the interference of the court. It must, in addition, be shown that the rule by which the benefits were measured was fundamentally wrong and so arbitrary and unjust, as affecting the property owner, as to evidence "fraud, mistake (of fact or law, but not matters of opinion), or arbitrary action amounting to a manifest abuse of discretion." *In re Westlake Avenue*, 40 Wash. 144, 82 Pac. 279; *In re Fifth Avenue etc.*, 66 Wash. 327, 119 Pac. 852.

The main objection here seems to be that the property of appellant is used for church purposes, and that the improvement is not beneficial for such purposes to the extent of the assessment. The use to which the property is put cannot of itself determine the question of benefits, but the usual test is the increase of value for any use to which the land might be adapted. *Northern Pac. R. Co. v. Seattle*, 46 Wash. 674, 91 Pac. 244, 123 Am. St. 955, 12 L. R. A. (N. S.) 121; *Newell v. Loeb*, 77 Wash. 182, 137 Pac. 811. In the first of these cases, it was said:

"The particular use of the land cannot affect its liability to assessment; abutting property cannot be relieved from the burden of a street assessment simply because its owner has seen fit to devote it to a use which may not be specially benefited by the local improvement. The benefit is presumed to inure, not to such present use, but to the property itself, affecting its value."

The record in this case does not show any fact which should lead us to disturb the judgment, and it is affirmed.

MOUNT, MAIN, PARKER, and ELLIS, JJ., concur.

CHADWICK, J. (dissenting)—This is an eminent domain proceeding. I have prepared a plat to illustrate my argument.

If it is apparent from the record that the eminent domain commission has not made a fair assessment, we have always set aside the assessment roll. The test usually employed is to compare the assessment upon the property of the protesting owners with the assessment put upon the property relatively situated. The appellant is the owner of prop-

erty equal in extent to two blocks, bounded by Thirteenth and Twelfth streets on the north and south, and Washington and Daniels streets on the east and west. Columbia street, which runs north and south between Washington and Daniels street, was unopened through the property of the appellant. The city brought a proceeding to condemn a strip of land sixty feet wide and conforming to the boundaries of Columbia street if it extended through the property. There were two or three assessment rolls made up, but we shall deal only with the one now before us. The last roll assessed the property of appellant from one hundred to one hundred and fifty per cent higher than did the first roll. The disposition of the board of eminent domain to assess back upon the property of appellant as much as it thought it could is not concealed. One member of the board testifies that it was the intention of the board to *raise a sufficient amount of money irrespective of benefits. Another member testified that it was his intention to assess a good share of the amount necessary to be raised to pay the judgment entered in the eminent domain proceedings upon the property of appellant, and regardless of any increased value.* In answer to the direct question: *"Then your idea was to assess the entire proposition on the church property?"* he said: *"Yes, that was my idea."*

Disregarding the opinion of many witnesses who testified that the benefit to appellant's property was very much less in all instances (more than one hundred per cent less) than the amount fixed in the assessment roll, and taking the testimony of the commission, and the assessment roll itself, the case falls squarely within several of our own former decisions. The roll shows upon its face a disposition to cancel arbitrarily as much of the judgment entered in favor of appellant for the taking of its property as the conscience of the board would permit. Taking the same basis of comparison that we have heretofore employed in similar cases, we find that a lot 33x100 owned by appellant is assessed at

$312.50, while diagonally across Thirteenth street a lot 42.61x101.25 is assessed at $70. A lot owned by appellant, 33x100, on the corner of Twelfth and Columbia streets as extended, is assessed at $275. A lot diagonally across, 100x75 feet, is assessed at $75.

The opinion of the majority but skims the surface of the case. They take into consideration only the one lot at the northeast corner of Thirteenth and Columbia streets and the lot opposite. Appellant's lot is fractional and assessed at $312, while the whole lot directly opposite is assessed at $103. The majority says that the plat suggests a reason for the difference, and argues that, because the lot of appellant is left as a corner lot, it is not injured but is benefited. The utter fallacy of this reasoning is apparent when it is understood, and the record shows, that the object of cutting through the property of appellant, which was devoted to a particular use, was *to give the people living north of this property a direct roadway into the business center of the city of Vancouver.*

But the case cannot be decided by taking one lot alone and comparing it with another and there closing the inquiry. The majority assume that there may be a greater benefit in a corner lot, although it is well known that this is not so unless the property is to be business property.

Accepting the theory of the majority and carrying it to other lots similarly situated, that is, inside lots, we have one of the lots of appellant in block three assessed at $171.88, and one directly opposite at $52.50; another at $75, and the one opposite at $30; another at $37.50, and one opposite at $15. The lots on Thirteenth street and those opposite are relatively disproportionate. The fractional half block, or tract twenty, being 83x200 feet, belonging to appellant, is assessed at $968.75. A full half block to the north, to which the improvement is immediately beneficial, is assessed at $272.10. It seems to me that the plat needs no further discussion. It speaks for itself.

While it is true we have consistently held to the doctrine that we will not hold an assessment to be arbitrary or unjust where there is a mere difference of opinion, we have also laid down the rule that an unjust or arbitrary assessment will not be allowed to go unchallenged, and further, that a manifest disposition on the part of an eminent domain commission to make the remainder of a claimant's property pay the cost of that which is taken will be held to be an arbitrary exercise of power on the part of the city. It is not a question of benefit alone. It may be that a particular piece of property is benefited to the extent of the whole improvement, but in eminent domain cases the real question is one of relative benefit, and whether the assessment has been "distributed with substantial equality over all property of like kind and similarly situated with reference to the subject-matter of the assessment." *In re Eighth Avenue Northwest*, 77 Wash. 570, 138 Pac. 10. See, also, *In re Ninth Avenue West*, 76 Wash. 401, 136 Pac. 488.

Upon a similar state of facts, the court said, in *In re Fifth Avenue West*, 80 Wash. 464, 141 Pac. 1035:

"The courts will not concern themselves with mere differences of opinion as to the actual benefits conferred, but it must appear from the proceedings as a whole that the authority levying the assessment has acted arbitrarily in disregard of the actual benefits, or has proceeded upon a fundamentally wrong basis. We have no hesitancy, however, in saying that the record shows arbitrary action on the part of the eminent domain commissioners in the present instance. The very fact that they found so large a part of the benefits to have been conferred upon the property of the persons who received the award for the property taken is alone sufficient to excite inquiry as to their good faith. It raises the suspicion that they thought the jury's award excessive, and sought to correct it. But the amount of the award made by the jury was of no concern of the eminent domain commissioners. If the award was in excess of the actual value of the property taken and damaged, it should have been corrected in the condemnation proceeding itself by some of the

methods provided by law for the correction of excessive verdicts. When the award has been allowed to become final in its effect it must be accepted as a verity, and the subsequent proceedings must be governed by the principle that it is final and not subject to further inquiry or correction. But whatever may have been the theory on which the eminent domain commissioners acted, we think the evidence clearly demonstrates that the appellants' property has not only been assessed more than its proportionate share of the cost of the improvement, but grossly in excess of the benefits conferred upon it by the improvement."

So, also, in *Spokane v. Kraft*, 82 Wash. 238, 144 Pac. 286, we said:

"In some of our cases where there was no question of relative benefit, the court has said that a property owner could not complain of the amount of the assessment, provided it did not exceed the benefits. In those cases the questions of relative value seem not to have been raised. It has never been our purpose to hold, for it is not the law, that a property owner can be compelled to give his property for a public use without compensation; or, in meeting a burden common to the public, pay more than his relative share. The question here is, not whether the particular property is benefited, but whether all property relatively benefited bears its equable and equitable proportion of the costs of the property or improvement. . . .

"But it is insisted that we have held, without qualification and steadfastly, that this court will not disturb an assessment unless it appears that it was made in fraud of the right of a property owner, or that it was arbitrary, or captious, or that the assessment was made upon a fundamentally wrong basis, and that there is no evidence in this case that this was so.

"It occurs to us that the record is pregnant with the *indicia* of an arbitrary purpose to lay a heavy hand upon appellants and to compel them, by a process of litigation and bookkeeping, to practically donate the property taken from them for street purposes.

"No better evidence could be offered than the fact that the eminent domain commissioners disregarded the relative situation and benefit to other property. . . .

"While the temptation to put the burden of payment upon the property owner in such cases may be strong, yet the law is such that the board should disregard entirely the source from whence the property comes, and treat the claimant in a condemnation suit when his day for assessment comes as it would one whose property had not been taken, and assess benefits, if any, accordingly."

Furthermore, appellant rests its case upon our holding in *In re West Bertona Street*, 81 Wash. 125, 142 Pac. 483, where the city condemned property through a tract held and used for school purposes. Forty per cent of the cost in the *West Bertona Street* case was taxed back upon the claimant's property. We there held that it would be manifestly unjust to tax more than a relative proportion of the cost of the improvement to the remaining property; that the street would be of no greater benefit to the abutting property than it would to other property which would have access to a new street which was necessary for their convenience and was not desired, nor would it add to the convenience of the school property.

Counsel for respondent does not deny that the assessments are greatly in excess of the assessment upon adjacent property. He says:

"True, the assessments placed upon the appellant were greatly in excess of the assessments placed upon adjacent property, but the adjacent property did not have any increased frontage by the improvement."

The law will not tolerate the presumption that the increased frontage will be of greater benefit to the property remaining than it is to other property. That question is merged in the former judgment. *Lincoln County v. Brock*, 37 Wash. 14, 79 Pac. 477; *Lewis v. Seattle*, 5 Wash. 741, 32 Pac. 794; *Kitsap County v. Melker*, 50 Wash. 29, 96 Pac. 695; *Hieber v. Spokane*, 73 Wash. 122, 131 Pac. 478; *Pierce County v. Thompson*, 82 Wash. 440, 144 Pac. 704.

The only ground for the increased assessment suggested

by the commissioners and the only justification for their action urged by counsel being that appellant is given an increased frontage, it would seem that the assessment cannot be sustained, under the *West Bertona Street* case, *supra*. We there held, and rightly, too, that an assessment based on benefits for an increased frontage to one whose property had been taken was laid under a fundamentally wrong basis. The eminent domain commissioners can do no more than to assess an amount sufficient to pay the judgment in the eminent domain proceeding and fairly distribute it over the improvement district. *This is not a street improvement under the assessment district statute. It is an eminent domain proceeding*, and any plan that in its operation makes one whose property is taken pay more than his share of the judgment is arbitrary and unjust; especially so, where the commissioners frankly admit a purpose which has received the condemnation of this court whenever presented, and have as frankly published their purpose in the assessment roll. They have proceeded under a misconception of the law and upon a fundamentally wrong basis.

But accepting the frontage theory, let me demonstrate that its assertion is a subterfuge. Reject lot 5, in block 3, as having new frontage. Then take of the remainder of appellant's property in block 3, lots 4, 3, 2, and 1, on Thirteenth street. These are assessed at $330.62, and the same approximate area across Thirteenth street is assessed at $61.05. Reject lot 6, and take lots 7, 8, 9 and 10. These are assessed at $299.38, while the lots across Twelfth street aggregating an area equal to four-fifths of lots 7, 8, 9, and 10, are assessed at $107.50. Can it be said that appellant's lots that do not touch the opened street are benefited more than like property belonging to other people? None of the lots mentioned have any more frontage than they had before. They have the same benefit. Their relative situation is the same, and, in the absence of some reason not apparent in the record, should be assessed for about the same

amounts.    When it is understood that the street is opened
to make an arterial way connecting Columbia street and for
the general convenience of all property in the district, it
will be readily seen that respondent has asserted a position
that is not only not good in law, but is contradicted by its
own figures.

Failing to distinguish between a case where an assessment
is laid to cover the cost of an improvement under a local
assessment statute, and an assessment made by an eminent
domain commission to cover the cost of taking property in
an eminent domain proceeding, the majority has gone astray.
In the first class of cases, there may be differences of opinion
as to benefits of which the courts will take no notice, for
assuredly, so long as a person is not called upon to pay a
sum in excess of benefits, he should not complain.    But in
the second class of cases, the first inquiry is not one of
benefit, but whether the owner has received that compensa-
tion for the property taken which the constitution, art. 1,
§ 16, guarantees to him.

The law is that all property benefited shall bear its just
proportion of the cost and that the owner shall not be de-
prived of his compensation by resort to subterfuge.    The
question of benefit is considered only as it relates to the dis-
tribution of this cost, and we had so thoroughly established
the rule that the cost is to be distributed in proportion to
the relative benefit, that I had believed the question to be
forever foreclosed.    *Spokane v. Onstine*, 86 Wash. 4, 149
Pac. 1.

If it is not so, a city, acting through an eminent domain
commission that is willing to boldly assert its purpose to
make the property taken bear a disproportionate part of
the cost, as was done in this case, can defeat one of the first
and most cherished declarations of the Bill of Rights.    It
can punish a property holder if he is not willing to give
that which the constitution says shall not be taken without
just compensation first ascertained and paid.

The plat speaks the utter disregard of appellant's rights more eloquently than words, and gives emphasis to the fact that this court is willing to sustain a city when it openly declares that it did not, and does not, intend to respect the rights of the appellant. If the argument of the majority be sound, a city is not under compulsion to make even a pretense of distributing the relative cost of taking property, but may assess the whole of it to the unwilling landowner.

The majority rests its decision upon *Viegle v. Spokane*, 78 Wash. 359, 139 Pac. 33; *In re Boyer Avenue*, 79 Wash. 664, 141 Pac. 58, and undertakes to distinguish *In re Eighth Avenue Northwest*, and *In re Ninth Avenue West, supra. Viegle v. Spokane* was a local improvement case, and the law governing this proceeding had no application. *In re Boyer Avenue* was an eminent domain case. The "difference of opinion" in that case which the court refused to arbitrate was a difference, not in the laying of the cost, but over the boundaries of the district. Upon the question of assessment, we held that the purpose being to make an arterial highway (as in this case), part of the cost should be borne by the city. In so far as the *Boyer Avenue* case touches this case, it is an authority against the holding of the majority. In *In re Ninth Avenue*, the court did not hold that the assessment was bad because the whole cost was assessed back upon the property, but specifically because all property relatively benefited should bear a just proportion of the cost. The principle is well stated in the concurring opinion written by Judge Ellis. He said:

"I am not convinced that the assessment was made upon a fundamentally wrong basis, nor that the appellants' property was not benefited to a greater extent than the property on the opposite side of the street. The disparity, however, between the two amounts seems to me so great as to indicate arbitrary action. It is difficult to see from the evidence wherein the appellants' property was benefited in more than

double the amount assessed against like property across the street."

The same holding was made in the *Eighth Avenue* case. The other cases relied upon state admitted propositions, but they have no bearing upon the questions presented by the record.

There is no question of difference of opinion in this case. Opinion implies reason. An opinion that will not reason out is no opinion. An arbitrary purpose to do that which the law says shall not be done cannot be sustained under the cloak of opinion. But, granting that there is a difference of opinion between appellant and its witnesses and the eminent domain commissioners, we may still look to the reason. When we do so, we find, as the commissioners admit, an arbitrary design to reduce appellant's award in the condemnation suit to an amount which, in their judgment, is more equitable than the sum found by the jury.

It seems to me that the majority, in holding that appellant cannot complain if it is benefited in any degree, have abandoned a most salutary rule; that is, that assessments to cover the cost of taking property must be made upon the basis of relative benefit, and if not so made, are laid upon a fundamentally wrong basis. All, or the greater proportion, of the expense of an improvement creating an arterial highway for the greater, if not the sole benefit, of others, should not, in justice and equity, be put on the property of the one whose property has been taken. When it is done, as in this case, it should not be countenanced.

For these reasons, I dissent from the opinion of the court.

FULLERTON, J., concurs with CHADWICK, J.

HOLCOMB, J. (dissenting)—I cannot escape the conviction that the assessments levied back against appellant's property and the situation existing are extremely similar to those shown in *In re West Bertona Street*, 81 Wash. 125, 142 Pac. 483. Upon the reasoning in that case, this case should follow the same course. I therefore dissent.