[No. 21075.   Department One.   June 15, 1928.]

*In re Appeals of* A. L. JOHNSON *et al.*
*In re* LOCAL IMPROVEMENT DISTRICT 417 OF CITY OF
OLYMPIA.[1]

[1] MUNICIPAL CORPORATIONS (211)—PUBLIC IMPROVEMENTS—ASSESS-
MENTS—BENEFITS—ADJOINING OR ADJACENT PROPERTY. The city
council did not arbitrarily and unwarrantedly include, in an
assessment district for the improvement and paving of one
end of a street, property abutting on the other end of the street,
already paved, where it resulted in making the street an
arterial street and diverted past such property a part of the
traffic entering the city.

[2] SAME (211). In such a case, it was an arbitrary and unwar-
ranted inclusion in the district of other property at the far
end of the street, where no such entering traffic would be
diverted past such property, which could receive no benefit
from the diversion of traffic.

[3] MUNICIPAL CORPORATIONS (211, 267-3)—PUBLIC IMPROVEMENTS—
ADJACENT PROPERTY—ASSESSMENT — EXCESSIVENESS. Property
abutting on a new pavement of the end of a street will be
benefited far more than business property abutting on the
other end of the street already paved, and which is benefited
only by the diversion of traffic entering the city; and a nearly
equal assessment is excessive and will be reduced to make the
latter forty per cent of the benefit to property abutting on the
improvement.

[4] SAME (211, 267-3). In such a case, a nearly equal assessment
of residence property on a portion of the street already paved,
which has slight prospect of becoming business property and
is but slightly benefited by such diversion of the traffic, is
excessive, and will be reduced to ten per cent of the benefit to
property abutting on the improvement.

Appeal from a judgment of the superior court for
Thurston county, Wilson, J., entered October 10, 1927,
confirming an assessment roll for a public improve-
ment. Reversed.

[1]Reported in 268 Pac. 164.

*Thos. L. O'Leary,* for appellants.

*John S. Lynch, Troy & Yantis,* and *Preston, Thorgrimson & Turner,* for respondent.

PARKER, J.—This case is a consolidation of the appeals of eighteen property owners from a judgment of the superior court for Thurston county affirming special assessments levied by the city of Olympia upon their respective properties, lying in the enlarged portion of a local improvement district, to aid in paying for the paving improvement of a portion of State avenue, formerly Third street, in that city, upon which their properties do not abut; they having appealed to the superior court from the confirmation of the assessments by the city authorities. The city authorities enlarged the assessment district so as to include appellant's properties, assuming to so do under Rem. Comp. Stat., § 9366 [P. C. § 1002], and proceeding upon the theory that the properties of appellants would be specially benefited by the improvement, though not abutting thereon.

The controlling facts may be fairly summarized as follows: The Pacific Highway is the most important highway passing through the city. It lies along Fourth avenue, formerly Fourth street, parallel with, and one block south of, State avenue, formerly Third street, from the east city limits west to Capitol Way, and thence south along Capitol Way to the south city limits. The intersection of Fourth avenue and Capitol Way is the busiest traffic corner in the city, and has been for many years past the center of the business of the city, though in recent years the business of the city has a decided tendency to move south of Fourth avenue and east of Capitol Way. The Olympic Highway is second in importance of the highways entering the city. It lies along Fourth avenue west from the

intersection of that avenue with Capitol Way, joining the Pacific Highway at that point. There is no entrance to the business portion of the city from the west save along Fourth avenue over a waterway bridge near the head of the bay, which bridge is a short distance west of Capitol Way. State avenue ends at the water front, two blocks west of Capitol Way, and there is no likelihood of it ever being extended farther west across the head of the bay. The business of the city, other than lumbering and other manufacturing, is almost wholly south of State avenue. All residents of the city living south of Fourth avenue, and all living west of Capitol Way, going to the business portion of the city, would seldom have occasion to go upon State avenue. Residents of the northeasterly portion of the city, comprising less than one-quarter of the city's population, in going to the business portion of the city, can go west along State avenue in preference to Fourth avenue and turn south on Capitol Way, or other streets, into the business district.

Some eight years ago, State avenue was improved by paving its roadway forty feet wide, from its west end for a distance of seven blocks east to Cherry street. The property abutting upon this paved portion of State avenue may be classed as business or manufacturing property. Aside from manufacturing and automobile garage business, the business along that portion of State avenue is of a very minor character as compared with the main business portion of the city. About the same time that portion of State avenue was improved, it was further improved by paving its roadway twenty feet wide from Cherry street for a distance of two blocks east to East Bay Drive. The property fronting this narrow pavement can hardly be classed other than as residence property, except the northeast corner of State avenue and Cherry street is occupied

by a veneer manufacturing concern. For some time past, automobile travel entering the city from the east on the Pacific Highway has, to a considerable extent, turned south off Fourth avenue onto Central street, which is four blocks from the east city limits, and turned thence west on Sixth avenue, which is a wide paved street clear to Capitol Way, passing for two or three blocks before reaching Capitol Way through what may be termed the southern portion of the business district of the city; there passing the principal hotel of the city and the very much used suburban bus station of the city, which is the principal passenger transportation center of the city, being two blocks south and one block east of the intersection of Fourth avenue and Capitol Way.

In the spring of 1926, the city authorities and the state highway authorities came to an agreement that the Pacific Highway should, by the state acquiring some additional right of way east of the city limits, make connection with State avenue at the east city limits so that travel entering the city from the east over the Pacific Highway could enter over State avenue as well as over Fourth avenue; the state, by appropriate signs, to indicate State avenue instead of Fourth avenue as the Pacific Highway, though leaving the Fourth avenue connection with the Pacific Highway undisturbed, so that travel would continue to be as free to enter the city over Fourth avenue as over State avenue. In this connection, we note that the Pacific Highway approaches the city from a somewhat southeasterly direction so that, in effecting its connection with State avenue, it will diagonally cross Fourth avenue a very short distance east of the city limits, and thus, in some measure, take a roundabout way in reaching the business portion of the city. We shall assume that this agreement between the city and state

highway authorities is being, and soon will be, fully consummated.

In June, 1926, the city authorities, by appropriate resolution and ordinance, established an enlarged local improvement assessment district looking to the improvement of State avenue from East Bay Drive to the east city limits, a distance of thirteen blocks, by paving its roadway twenty-four feet wide, and assessing the cost thereof against all the property in an enlarged assessment district consisting of all of the property abutting upon both sides of the street along its entire length from its west end at the waterway two blocks west of Capitol Way, to the east city limits; the city authorities proceeding upon the theory that the property in the enlarged portion of the district, that is, property west of East Bay Drive and not abutting upon the improvement, would be benefited by the improvement approximately in the same amount per front foot as the property abutting upon the improvement. These appellants, owners of property in the enlarged portion of the district, timely protested against their property being included in the enlarged district and charged with any portion of the cost of the improvement. These protests were overruled by the city authorities, the improvement was made and in due course assessments levied against the properties of the appellants over their former protests, and also over their timely objections to their several assessments, made also upon the ground that such assessments were, in any event, far in excess of any benefits to their respective properties resulting from the making of the improvement. In the levying of the several assessments, the city authorities levied a front foot assessment against the properties of the appellants, approximately the same in amount as the front foot assessments levied upon the properties abutting upon the improve-

ment; that is, the appellants' sixty foot lots abutting upon the enlarged portion of the district were each assessed $318.17 to $334.91, while each sixty front feet of the property abutting upon the improvement was assessed $341.24.

[1]  We first inquire as to what extent, if at all, the city authorities acted arbitrarily in fixing the limits of the enlarged district so as to include therein the properties of appellants and so render them subject to assessment to aid in paying the cost of the improvement. It has been often held that the courts will not set aside the conclusions of local assessment authorities in fixing boundaries of an enlarged assessment district, except upon a clear showing of arbitrary action in that behalf by the assessing authorities; this manifestly upon the well-recognized difficulty of determining with any degree of exactness just how far from the improvement the special benefits resulting from its construction may extend. *Spokane v. Miles,* 72 Wash. 571, 131 Pac. 206; *Spokane v. Fonnell,* 75 Wash. 417, 135 Pac. 211; *In re Boyer Avenue,* 79 Wash. 664, 141 Pac. 58; *In re Twentieth Avenue Northeast,* 95 Wash. 5, 163 Pac. 12. Having in mind this general rule, we cannot say that the quarter blocks abutting on Capitol Way and State avenue at the northwest and southwest corners of that intersection and the one-half blocks abutting upon State avenue between Capitol Way and East Bay Drive are not specially benefited in some measure by the improvement, though none of these properties abuts upon the improvement. These properties do seem to reap some special benefit by reason of the extended improvement of State avenue to the east city limits. In any event, we cannot say that the city authorities, in so deciding, did so arbitrarily and without substantial reason. State avenue, by the improvement, becomes, east of Capitol Way, in at least some

degree, an arterial highway, though probably in actual use Fourth avenue will continue to be the main arterial highway entering the city from the east. We conclude that these properties were not erroneously included in the enlarged assessment district.

[2] As to the properties abutting upon State avenue to the west of Capitol Way, other than the quarter blocks at the northwest and southwest corners of Capitol Way and State avenue, it seems plain to us they do not receive any special benefits from the construction of the improvement in question. To whatever extent State avenue becomes an arterial highway leading from the east to the business portion of the city, its character in that respect will end at Capitol Way. To that extent, at all events, as the Pacific Highway, it will turn south into Capitol Way. Indeed, the evidence tends strongly to show that much of the travel along State avenue to the business portion of the city will find its way south from State avenue along streets east of Capitol Way. We conclude, therefore, that the properties of appellants abutting on State avenue west of the quarter blocks at the northwest and southwest corners of Capitol Way and State avenue receive no special benefit whatever from the construction of the improvement in question, and should, therefore, be excluded from the enlarged assessment district and wholly exempt from assessment.

[3] We next notice as to what extent, if at all, the assessments are excessive upon the other properties of appellants abutting upon State avenue west of Cherry street, along in front of which the wide pavement was constructed some eight years ago. While we have concluded that these properties were not erroneously included in the enlarged assessment district, we are nevertheless of the opinion that they are much less specially benefited by the improvement than the prop-

erties abutting directly upon the improvement. We conclude that these properties of appellants should not have charged against them any assessment in excess of forty per cent of the assessments chargeable against the properties abutting upon the improvement, computed upon the front foot basis.

[4] We next notice as to what extent, if at all, the assessments are excessive upon the properties of appellant abutting upon State avenue between Cherry street and East Bay Drive, a distance of two blocks, where the twenty foot pavement was constructed some eight years ago. These properties are almost wholly residence properties, not materially different from properties abutting directly upon the improvement, though less desirable as residence properties, and having but slight prospect of becoming business properties. Clearly, we think they are not specially benefited by the improvement anywhere near the amount that the abutting properties are specially benefited by the improvement. Indeed, it might well be argued that these properties receive no special benefit from the construction of the improvement. However, we do not feel able to so decide, in view of the decision of the city authorities to place them in the enlarged assessment district, there being some room for difference of opinion as to their receiving special benefit in some small measure from the construction of the improvement. All things considered, we conclude that these properties should be assessed not exceeding ten per cent of the assessments chargeable against the properties abutting upon the improvement, computed upon the front foot basis.

In thus disposing of this controversy touching the question of the proportionate amount of assessments properly chargeable against the properties of appellants, apart from the question of the proper bound-

aries of the assessment district, we have not failed to heed the presumption that the city authorities, in apportioning the assessments, did not act arbitrarily. We nevertheless readily reach our conclusion, touching the question of the amounts of the assessments, that they were all clearly excessive to the extent that we have indicated.

The judgment of the superior court, in affirming the confirmation of the assessments made by the city authorities, is reversed and the cause remanded to the superior court with directions to enter its judgment relieving the properties of appellants of the charge of the assessments levied against them to the extent herein indicated, and for such further proceedings in that court, and, if necessary, by the city assessing authorities, as may be in harmony with the views herein expressed.

FULLERTON, C. J., MITCHELL, TOLMAN, and ASKREN, JJ., concur.