[No. 690-41532-1.　Division One—Panel 2.　January 17, 1972.]

CITIZENS FOR UNDERGROUND EQUALITY et al., *Appellants*, v. THE CITY OF SEATTLE et al., *Respondents*.

*Miller, Howell & Watson* and *John M. Watson,* for appellants.

*A. L. Newbould, G. Grant Wilcox,* and *Jorgen G. Bader,* for respondents.

*Schroeter, Jackson, Goldmark & Bender* and *Roger M. Leed,* amici curiae.

JAMES, J.—In January of 1968, pursuant to RCW 35.96.030,[1] the City of Seattle, by resolution No. 21340 de-

[1] "Every city or town shall have the power to convert existing overhead electric and communication facilities to underground facilities pursuant to RCW 35.43.190 where such facilities are owned or operated by the city or town. Where such facilities are not so owned or operated, every city or town shall have the power to contract with electric and communication utilities, as hereinafter provided, for the conversion of existing overhead electric and communication facilities to underground facilities. To provide funds to pay the whole or any part of the cost of any such conversion, either where the existing overhead electric and communication facilities are owned or operated by the city or town or where they are not so owned or operated, every city or town shall have the power to create local improvement districts and to levy and collect special assessments against the real property specially benefited by such

clared its policy to promote and encourage the conversion of overhead utility wiring to an underground system. Significant to the issues which we confront in this case is the declared policy that the cost of placing existing overhead facilities underground on principal arterial streets and at scenic points shall be borne *entirely* by the city, but that the cost of "undergrounding" in "residential neighborhoods" shall be financed by the levy of special assessments, with the city *sharing* the cost "to a substantial extent."

All appellants are members of Citizens for Underground Equality, an unincorporated association formed for the purpose of opposing the financing of undergrounding in residential neighborhoods by means of the city's scheme of sharing costs. Some of the members are property owners residing within Local Improvement District No. 6411, which was created pursuant to an initiating petition filed by approximately 62 per cent of the property owners residing within the district. Other members are residential property owners who do not presently live within a local improvement district, but who believe that their neighborhood is unable to afford the cost of undergrounding under the city's plan. All appellants are rate payers of Seattle City Light.

Over the objection of some of the appellants, who appeared at the RCW 35.43.140 hearing which the city council held to determine whether or not to create the local improvement district, the city council passed resolution No. 21721 ordering the improvement, and enacted ordinance No. 98265 creating Local Improvement District No. 6411. The ordinance provides that the city will contribute $120,000 toward the total project cost, estimated to be about $250,000. The money to pay the city's approximately 50 per cent share will come from Seattle City Light's General

conversion. For the purpose of ascertaining the amount to be assessed against each lot or parcel of land within any local improvement district established pursuant to this chapter, in addition to other methods provided by law for apportioning special benefits, the legislative authority of any city or town may apportion all or part of the special benefits accruing on a square footage basis or on a per lot basis."

Fund, which is comprised of money collected from rate payers city-wide. The estimated assessment for each home-site serviced by underground electrical connections is $615, but a few homes, which receive only improved street lighting, will pay $156.38. The property owners' 50 per cent is loaned to them from the City of Seattle Employees' Retirement Fund, and is repayable on an installment basis.

Appellants brought this action challenging the jurisdiction of the city council to proceed. Appellants contend that (1) RCW 35.43.040(11) and (12) (which authorize cities to construct street lighting systems and underground utilities transmission lines and to finance the improvements by special assessments) are unconstitutional; (2) that RCW 35.96.030 (which also authorizes cities to underground electric and communications facilities, to collect special assessments against real property specially benefited by such conversion, and to "apportion all or part of the special benefits accruing on a square footage basis or on a per lot basis") is unconstitutional; (3) that RCW 35.44.047 (which provides that cities may use any method or combinations of methods to finance special assessments which more fairly reflect the special benefits to the properties being assessed) is unconstitutional; and (4) that RCW 35.43.080 (which permits the city council to fix the boundaries of the local improvement district) is unconstitutional.

Appellants moved for a restraining order and an order to show cause why a temporary injunction should not issue. The city countered with a motion for a summary judgment of dismissal, which was granted. This is an appeal from that judgment.

■ Since this case was terminated by the granting of the motion for summary judgment, our inquiry must be confined to determining whether there is a genuine issue as to any material fact, and if not, whether under the established facts, appellants state a claim upon which relief can be granted. All reasonable inferences must be resolved in favor of appellants, the nonmoving parties. *Regan v. Seat-*

*tle,* 76 Wn.2d 501, 458 P.2d 12 (1969); *Caldwell v. Yellow Cab Serv., Inc.,* 2 Wn. App. 588, 469 P.2d 218 (1970).

■ However, certain consequences attach to the fact that this is an appeal from a decision of the city council *creating* the local improvement district, and not an appeal from the *confirmation* of an assessment roll. At this stage of the proceedings the appellants can only challenge the "jurisdiction or authority" of the city council to proceed with creating the district. *Chandler v. Puyallup,* 70 Wash. 632, 127 P. 293 (1912) and RCW 35.43.100. If the statutes authorizing the creating of the district are constitutional, then the summary judgment of dismissal was proper.

Appellants cannot at this time contest the validity or amounts of the special assessments, nor can they question whether the benefits are special or general. These questions can be raised only at the subsequent hearing on the assessment roll. *Matthews v. Ellensburg,* 73 Wash. 272, 279, 131 P. 839 (1913) and Trautman, *Assessments in Washington,* 40 Wash. L. Rev. 100, 110 (1965).

Thus, although genuine issues as to material facts *might* arise if we were to consider the constitutionality of the methods of financing authorized by RCW 35.44.047, we cannot consider them at this time. The constitutionality of RCW 35.44.047, dealing as it does with the financing of the district and not its creating, can only be raised on appeal from the confirmation of the assessment roll.

■ The appellants contend that RCW 35.96.030, because it provides for assessments against property specially benefited on a per lot basis, authorizes special nonuniform flat rate taxation, in violation of article 7, section 9 of the Washington State Constitution. Because special assessments for local improvements are not deemed taxes within the uniformity provisions of the state constitution, this contention is without merit. *Berglund v. Tacoma,* 70 Wn.2d 475, 423 P.2d 922 (1967).

■ Appellants contend that RCW 35.43.080, which permits the city council to fix the boundaries of the local improvement district, violates due process by not providing

any guidelines for the city to follow. However, the constitutionality of allowing the city council broad discretion in fixing local improvement district boundaries has been judicially approved. *In re Orcas Street,* 87 Wash. 218, 223, 151 P. 506 (1915); *In re Eighth Ave. Northwest,* 77 Wash. 570, 138 P. 10 (1914). Courts may not set aside the boundaries fixed by the city council except upon a clear showing of arbitrary action. *In re Johnson,* 148 Wash. 140, 268 P. 164 (1928).

■ Appellants contend that RCW 35.43.040(11), (12) and RCW 35.96.030 authorize special privileges and immunities in violation of article 1, section 12 of the Washington State Constitution and the fourteenth amendment to the Constitution of the United States. Specifically, they contend that the statutes are unconstitutional because only isolated neighborhoods which can afford the costly conversion program will form local improvement districts and take advantage of the city's contribution. They assert that while poor neighborhoods will be unable to benefit from the scheme, money collected from those neighborhoods will be used to finance improvements for the wealthy.

The Fourteenth Amendment guarantees equal protection of the laws to all American citizens. Article 1, section 12 of the Washington State Constitution provides that:

> No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which *upon the same terms* shall not equally belong to all citizens, or corporations.

(Italics ours.) We are satisfied that the city's overall scheme for undergrounding electrical facilities, and the LID which appellants attack by this action do not violate either constitutional protection. All neighborhoods have the same opportunity to form an LID. RCW 35.43.070, 35.43.120. The property within each LID is assessed upon the same terms (*i.e.,* to the extent of the special benefit derived), regardless of whether the property is located in a wealthy or in a poor neighborhood.

■ The percentage of the city's contribution may vary from one LID to another, depending upon the apportionment between general benefits to the public at large and special benefits to the properties within the district. The distribution of costs between the city and those properties which will be specially benefited is a discretionary legislative decision. The courts will set aside such a decision only upon a showing that the city acted in an arbitrary and capricious manner.

> Whether or not the cost of the improvement shall be borne wholly by the property benefited, wholly by the public at large, or in part by the property benefited and in part by the public at large, are questions solely within the jurisdiction of the municipal officers to determine, and the courts have no power to control their discretion in that regard. *In re Westlake Avenue,* 40 Wash. 144, 82 Pac. 279; *Bauman v. Ross,* 167 U. S. 548; *Sheley v. Detroit,* 45 Mich. 431.

*Powell v. Walla Walla,* 64 Wash. 582, 584, 117 P. 389 (1911). Thus, each area has an *equal opportunity,* and an opportunity *upon the same terms* as all other areas of the city to underground its overhead utility wiring.

The California Supreme Court rejected a similar contention of economic discrimination in ruling that automobile financial responsibility laws do not unconstitutionally discriminate against the poor:

> The fallacy of the argument that the law favored the rich over the poor "lies in the failure to distinguish between equality of opportunity and ability to take advantage of the opportunity which is offered to all. The equality of the Constitution is the equality of right, and not of enjoyment."

*Escobedo v. State Dep't of Motor Vehicles,* 35 Cal. 2d 870, 878, 222 P.2d 1 (1950).

We are satisfied that the Washington statutory *scheme* which permits cities to underground their overhead utility wiring systems does not unconstitutionally discriminate against the poor. Further, *any* "citizen who may desire" may object to the city's apportionment between general

and special benefits at the hearing upon the assessment roll. RCW 35.44.080. Thus there is reserved to rich and poor alike the opportunity to ensure that the statutory scheme, although constitutional, is not administered in an unconstitutionally discriminatory manner.

The summary judgment of dismissal is affirmed.

SWANSON and WILLIAMS, JJ., concur.

Petition for rehearing denied March 28, 1972.

Review denied by Supreme Court May 24, 1972.