634

[No. 1359-3.    Division Three.    June 15, 1976.]

WHITWORTH WATER DISTRICT No. 2, *Appellant*, v. THE CITY OF SPOKANE, ET AL, *Respondents*.

*Richard J. Schroeder* and *Dellwo, Rudolf & Schroeder,* for appellant.

*Richard Wrenn, Corporation Counsel, Robert W. Twigg,* and *Sharpe, Twigg & Ganz,* for respondents.

GREEN, J.—Plaintiff, Whitworth Water District No. 2, brought this action to restrain the defendant, Skip Dahlen, from receiving water from the City of Spokane, and to restrain the defendant City from providing water to Mr. Dahlen. The trial court denied the injunction and the District appeals.

Mr. Dahlen constructed an office complex on the northwest corner of Division Street and Price Road on property located within the boundaries of Whitworth Water District.

No. 2 adjacent to the city limits of Spokane. When he applied to the District for water service, Mr. Dahlen was informed that he would be required to install and pay for substantial improvements by way of fire hydrants, meters, mains, and pipes over a considerable distance materially benefiting other property without contribution from such property owners. This expense was more than a mere connection charge; it was more akin to a local improvement benefiting a large portion of the District. Mr. Dahlen testified that the District's requirements would cost at least $15,000. After unsuccessful attempts to obtain what Mr. Dahlen considered to be a reasonable connection cost for the services, he requested temporary water service from the City of Spokane. He testified that the City agreed to provide temporary water service to the property until the District made water reasonably available to him on Price Road. This connection was made to a city main located directly across Division Street at a cost of about $3,000.

■ First, the District assigns error to the following findings of fact:

## VI.

The Defendant SKIP DAHLEN was advised by WHITWORTH WATER DISTRICT that before he would be furnished water to his property, he would be required to install certain pipes, mains, fire hydrants, and meters at a cost to Defendant of $15,000.00 or more.

## VII.

That said action on the part of Plaintiff was arbitrary and capricious and was made without consideration to other reasonable alternatives.

## VIII.

That none of the proposals of Plaintiff meet minimum standards of fairness and resulted in a grave imbalance of burdens and benefits.

## IX.

That Defendant CITY OF SPOKANE, in making water available to Defendant SKIP DAHLEN, did so on a temporary basis—only until such time that water is made reasonably available.

### X.

That Defendant CITY OF SPOKANE did not by its action wrongfully purloin Plaintiff's customers.

. . .

### XII.

That the action taken by the Spokane City Council was proper and within its authority and not in violation of the Open Meeting Law.

### XIII.

"That the injury to Plaintiff if any is neither irreparable or permanent."

After review of the record, we find these findings are supported by substantial evidence and they will not be disturbed on appeal. *Sylvester v. Imhoff*, 81 Wn.2d 637, 503 P.2d 734 (1972); *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

Secondly, the District assigns error to the trial court's conclusions of law,[1] in essence, contending that statutory and case law required the entry of an order restraining the City's delivery and Mr. Dahlen's acceptance of the water. It is argued that under the boundary review act, RCW 36.93, and *Alderwood Water Dist. v. Pope & Talbot, Inc.*, 62 Wn.2d 319, 382 P.2d 639 (1963), a municipal water department—here, the City of Spokane—is prohibited from directly furnishing water to inhabitants of an area located outside its boundaries. Based on the unique circumstances of this case, we disagree and find the boundary review act inapplicable and Alderwood distinguishable.

The boundary review act provides:

Whenever any of the following described actions are proposed in a county in which a board has been established, the initiators of the action shall file a notice of

---

[1]Conclusion of law No. 2: "That a permanent injunction restraining Defendant CITY OF SPOKANE from providing water for and delivering water to Defendant SKIP DAHLEN not be granted."

Conclusion of law No. 3: "That a permanent injunction restraining Defendant SKIP DAHLEN from accepting water from the CITY OF SPOKANE and connecting to the water system of the CITY OF SPOKANE not be granted."

Conclusion of law No. 4: "That the judgment for costs and disbursements sought by the Plaintiff be denied."

intention with the board, which may review any such proposed actions pertaining to:

(4) The extension of *permanent water* or sewer *service* outside of its existing corporate boundaries by a city, town, or special purpose district.

(Italics ours.) RCW 36.93.090. It is clear this act applies only to the extension of *permanent* service to customers outside the boundaries of a city. Here, the trial court, based on substantial evidence, found that the service extended by the City was *temporary*. Therefore, the boundary review act does not apply in this case.

Likewise, in the *Alderwood* case, the court held that a municipal water district cannot unilaterally furnish *permanent* water service outside of its boundaries to residents of another district. While the court in *Alderwood* recognized that water districts may, by statute, provide service to property owners outside their limits in some instances, the court would not sanction the use of the statute as a device for the raiding of one district's customers by another.[2] In contrast to the instant case, in *Alderwood* there were no allegations of bad faith or unreasonableness by the invaded water district, and the furnishing of water by the invading district was *permanent*. Here, the service provided to Mr. Dahlen is *temporary*, not permanent; the requirements im-

---

[2]This is in keeping with the purposes of the boundary review act, expressed in RCW 36.93.010:

"The legislature finds that in metropolitan areas of this state, experiencing heavy population growth, increased problems arise from rapid proliferation of municipalities and haphazard extension of and competition to extend municipal boundaries. These problems affect adversely the quality and quantity and cost of municipal services furnished, the financial integrity of certain municipalities, the consistency of local regulations, and many other incidents of local government. Further, the competition among municipalities for unincorporated territory and the disorganizing effect thereof on land use, the preservation of property values and the desired objective of a consistent comprehensive land use plan for populated areas, makes it appropriate that the legislature provide a method of guiding and controlling the creation and growth of municipalities in metropolitan areas so that such problems may be avoided and that residents and businesses in those areas may rely on the logical growth of local government affecting them."

posed by the District upon Mr. Dahlen were arbitrary, capricious, and unreasonable;[3] and the City is not raiding another district for permanent customers. For these reasons, the policy considerations underlying *Alderwood* do not apply. The District is not entitled to equitable relief in these circumstances. To obtain equity, the District must do equity. *Malo v. Anderson*, 62 Wn.2d 813, 817, 384 P.2d 867 (1963).

This is not to say that the District is without a remedy. If the matter of a reasonable connection charge cannot be resolved between the District and Mr. Dahlen or his successors in interest by negotiation, the District or Mr. Dahlen may bring an appropriate action to have that issue resolved between them. When a reasonable connection charge has been finally determined, then the furnishing of water directly to Mr. Dahlen by the City shall forthwith cease.

Affirmed.

McINTURFF, C.J., and MUNSON, J., concur.

---

[3]Reasonable connection charges are authorized by RCW 57.08.010: "A water district may . . . charge property owners seeking to connect to the district's water supply system . . . [a] reasonable connection charge . . . in order that such property owners shall bear their equitable share of the cost of such system."