[No. 5289–1.   Division One.   April 3, 1978.]

RODERICK E. ESPING, ET AL, *Appellants,* v. PHYLLIS D. PESICKA, ET AL, *Respondents.*

TUKWILA ASSOCIATES, *Appellant,* v. DWIGHT R. GARDNER, ET AL, *Respondents.*

*Dobson, Houser & Dobson* and *Wyman K. Dobson,* for appellants.

*LeSourd, Patten, Fleming & Hartung, Lawrence E. Hard,* and *Warren T. Chapman,* for respondents.

JAMES, J.—Appellants, plaintiffs below, sought to enjoin the formation of a local improvement district (LID) by the City of Tukwila. The named individual respondents are appropriate city officials. We affirm the trial judge's refusal to permanently enjoin the formation of the proposed LID.

The facts are not in dispute. On December 15, 1975, the city council of Tukwila passed a resolution declaring its intention to create a local improvement district and assess the cost of the proposed improvement against owners of property within the district. The proposed LID encompasses property owned by six different property owners. Five of the owners filed protests to the formation of the LID pursuant to RCW 35.43.180, which provides:

The jurisdiction of the legislative authority of a city or town to proceed with any local improvement initiated by resolution shall be divested by a protest filed with the city or town council within thirty days from the date of passage of the ordinance ordering the improvement,

signed by the owners of the property within the proposed local improvement district or utility local improvement district subject to sixty percent or more of the total cost of the improvement . . .

As determined by the preliminary estimates and the assessment roll, however, their properties were subject to only 54 percent of the total cost of the contemplated improvement. The 46 percent balance of the total cost was assessed against two tracts owned by Graydon Smith, who did not protest.

Smith, however, was bound by a "Property Use and Development Agreement" which his predecessor in interest had entered into with the City of Tukwila. The agreement, which by its terms is binding upon successors in interest, provides for a change in zoning permitting the construction of apartment houses upon the two tracts. The agreement provides, in part, that in consideration of the zoning change, the property owner will be required to provide certain utilities and improvements to two streets which abut his property "as buildings and improvements are made on the property." Exhibit 26. Neither Smith nor his predecessor have developed the property. Nor have they made any of the improvements as required by the agreement.

The improvements proposed by the LID include, but are more extensive than, those specified in the agreement. Additionally, the LID provides for utilities and improvements to the street which provides access to Smith's tracts. This street also abuts and serves the protesting appellants' properties.

Appellants contend that because Smith is obligated to provide some of the utilities and improvements proposed by the LID, either his property should be excluded from the boundaries of the LID or the LID cost assessed against his property should be excluded in calculating the "total cost" under the protest provisions of RCW 35.43.180. We do not agree.

Cities are given the authority by statute to establish the boundaries for a local improvement district. RCW

35.43.080. The statute provides that an LID "shall embrace as nearly as practicable all the property specially benefited by the improvement." In upholding the constitutionality of this statute in *Citizens for Underground Equality v. Seattle,* 6 Wn. App. 338, 343, 492 P.2d 1071, 51 A.L.R.3d 943 (1972), we concluded:

> the constitutionality of allowing the city council broad discretion in fixing local improvement district boundaries has been judicially approved. *In re Orcas Street,* 87 Wash. 218, 223, 151 P. 506 (1915); *In re Eighth Ave. Northwest,* 77 Wash. 570, 138 P. 10 (1914). Courts may not set aside the boundaries fixed by the city council except upon a clear showing of arbitrary action. *In re Johnson,* 148 Wash. 140, 268 P. 164 (1928).

We find no abuse of discretion or arbitrary action in this case. Smith's property will be "specially benefited" (RCW 35.43.080) since the proposed LID improvements are more extensive than those which Smith would be obligated to make; the improvements will be made now rather than "as buildings and improvements are made on the property" (exhibit 26), and the LID provides for improvement of the street which abuts and provides access to Smith's property.

Since we find that Smith's property was properly included within the boundaries of the LID, we next consider the issue raised by appellants concerning the meaning and effect to be given to the words "total cost of the improvement" as they appear in RCW 35.43.180. In the companion cases of *Kasper v. Edmonds,* 69 Wn.2d 799, 420 P.2d 346 (1966) and *Thymian v. Massart,* 69 Wn.2d 806, 420 P.2d 351 (1966), it was held that the words "total cost of the improvement" refer only to that portion of the project costs assessed against and borne by the property owners, excluding that portion of the cost paid by the city from municipal funds. Appellants argue that since the agreement obligates Smith "to complete the improvements, it is just as if the city had provided funds for such work" and that under the holdings in *Kasper* and *Thymian,* Smith's assessment under the proposed LID should be

excluded in calculating the "total cost of the improvement." We do not agree.

The improvements specified in the Property Use and Development Agreement are required to be made by Smith or his successors when and if "buildings and improvements are made on the property." Exhibit 26. Smith's inchoate covenant to pay for a portion of the improvements included in the LID is not, therefore, the equivalent of a cash contribution by the City of Tukwila to the total cost of the LID. The trial judge properly concluded that appellants' protests were not sufficient to divest the City of jurisdiction to proceed with the proposed LID.

The power to "check and balance" is an essential ingredient of our tripartite governmental scheme but it is a power which must be exercised with reasoned restraint. Without comment as to constitutionality, we observe that as early as 1911, the legislature evidenced its concern that the courts might be persuaded to judicially impair the legislative power to establish local improvement districts. That continuing legislative concern is presently expressed in RCW 35.43.020:

> The rule that statutes in derogation of the common law are to be strictly construed shall have no application to this and the following chapters relating to municipal local improvements but the same shall be liberally construed for the purpose of carrying out the objects for which intended.

Our Supreme Court has long recognized the propriety of the exercise of restraint when judicial intercession in the legislative creation of a local improvement district is sought:

> We have frequently held that the action of the commissioners in fixing the limits of the district and in determining what property is in fact benefited in apportioning the cost of improvement, in the absence of fraud or action clearly arbitrary, will not be disturbed by the court. The commissioners being appointed for the very purpose of doing these things, their action is entitled to the same presumption which attends official action in

other cases, and is conclusive in the absence of mistake, fraud or arbitrary discrimination amounting to an abuse of discretion.

*Spokane v. Fonnell,* 75 Wash. 417, 421, 135 P. 211 (1913).

The record in this case reveals that the Tukwila officials responsible for the formation of the LID here in question held numerous meetings and thoroughly and carefully considered all objections raised by appellants.

Appellants have not shown any mistake, fraud, or arbitrary action.

Affirmed.

ANDERSEN and RINGOLD, JJ., concur.

Reconsideration granted May 26, 1978.