[No. 45877.   En Banc.   August 16, 1979.]

RODERICK E. ESPING, ET AL, *Petitioners,* v. PHYLLIS D. PESICKA, ET AL, *Respondents.*

TUKWILA ASSOCIATES, *Petitioner,* v. DWIGHT R. GARDNER, ET AL, *Respondents.*

*Dobson, Houser & Dobson,* by *Wyman K. Dobson,* for petitioners.

*LeSourd, Patten, Fleming & Hartung, Lawrence E. Hard,* and *Warren T. Chapman,* for respondents.

WILLIAMS, J.—Petitioners are property owners challenging the formation of a local improvement district (LID) pursuant to RCW 35.43.180. Respondents are the City of Tukwila and a number of city officials. The trial court denied petitioners' application for a writ of prohibition, and the Court of Appeals affirmed the trial court's ruling. *Esping v. Pesicka,* 19 Wn. App. 646, 577 P.2d 152 (1978); *Esping v. Pesicka,* 21 Wn. App. 96, 583 P.2d 671 (1978). The matter comes to us on a petition for discretionary review. We reverse.

On December 15, 1975, the City Council of Tukwila passed resolution No. 507 declaring its intention to create an LID and assess the cost of the proposed improvement against owners of property within the district. The proposed LID encompasses property owned by six different property owners. Graydon Smith owns property which is subject to 46 percent of the total cost of the project. The remaining five property owners are jointly subject to 54 percent of the total cost of the contemplated improvement.

Smith is bound by a "Property Use and Development Agreement" into which his predecessor in interest had entered with the City of Tukwila. The agreement, which by its terms is binding upon Smith as the successor in interest, provides for a change in zoning which would then permit the construction of apartment houses upon the two tracts. The agreement provides in part that, in consideration of the zoning change, the property owner will be required to provide certain utilities and improvements to two streets which abut his property "as buildings and improvements are made on the property." (Exhibit 26.) A number of improvements which Smith is contractually bound to make are similar to those included within the proposed LID. The improvements proposed by the LID, however, are more extensive than those specified in the agreement between Smith and the City. The City granted Smith building permits in 1975, and he has constructed apartment buildings upon a substantial portion of the property located within the proposed LID boundaries. The City, however, has not required Smith to provide any of the improvements contemplated under the agreement.

All of the property owners except Smith filed protests to the formation of the LID. The power to block the formation of an LID is conferred by RCW 35.43.180, which provides in part:

> The jurisdiction of the legislative authority of a city or town to proceed with any local improvement initiated by resolution shall be divested by a protest filed with the city or town council within thirty days from the date of passage of the ordinance ordering the improvement, signed by the owners of the property within the proposed local improvement district or utility local improvement district *subject to sixty percent or more of the total cost of the improvement . . .*

(Italics ours.)

In challenging the formation of the LID under RCW 35.43.180, petitioners argued that since Smith is obligated to provide some of the utilities and improvements proposed by the LID, either his property should be excluded from

the boundaries of the LID or the amount of the assessment against his property should be excluded in calculating the "total cost" under the protest provisions of RCW 35.43.180. Petitioners took the position that the city's relinquishment of its rights under the contract amounted to a contribution to the LID paid by the city and that, pursuant to Washington case law, a contribution to an LID by a city must be deducted from the total cost of the improvement prior to determining what percentage of the property owners protested the formation of the LID. *See Kasper v. Edmonds,* 69 Wn.2d 799, 420 P.2d 346 (1966), and *Thymian v. Massart,* 69 Wn.2d 806, 420 P.2d 351 (1966).

The trial court rejected petitioners' arguments and entered a judgment for the City. On appeal, the Court of Appeals initially held in *Esping v. Pesicka, supra,* that the City's conditional release of Smith's obligations under the agreement was not the equivalent of a cash contribution by the City such that its value had to be excluded from the "total cost" computation. This ruling was predicated on the Court of Appeals' mistaken understanding that Smith had not yet developed his property, a condition precedent to his obligation to provide the improvements. However, on rehearing and after noting that the property had in fact been developed, the Court of Appeals again held that the City had not acted improperly in relinquishing its rights under the agreement with Smith in favor of those improvements to result from the formation of the LID and further held that such relinquishment did not constitute a contribution of public funds to the project in violation of the parties' right of protest under RCW 35.43.180. *Esping v. Pesicka,* 21 Wn. App. 96, 583 P.2d 671 (1978). Over Judge Ringold's dissent, the court thus adhered to its prior opinion affirming the trial court. We accepted review.

In the cases of *Kasper* and *Thymian,* the proposed LID's were to be paid for by assessments against property as well as by the direct contribution of municipal funds. Excluding the direct contribution by the cities, protesting property

owners would have borne over 60 percent of the total cost of the improvement. By including the direct contribution by the cities in the total cost of the improvement, however, the protesting property owners would have been subject to less than 60 percent of the cost of the LID and would therefore have been unable to block the LID pursuant to RCW 35.43.180.

In both *Kasper* and *Thymian*, this court held that "total cost of the improvement", as it appears in RCW 35.43.180, refers to the assessed cost *as borne by the property owners whose property is benefited,* and that properly filed protests representing 60 percent of this figure deprive a municipality of jurisdiction to proceed further with a proposed LID. The court in *Kasper* therefore concluded that the "total cost of the improvement" excludes that portion of the costs paid by the city from municipal funds.

■ The present case can be factually distinguished from *Kasper* and *Thymian* since in both of those cases the city's contested contributions were actual funds appropriated for purposes of the LID. In this case, the alleged city contribution consists not of money but of the relinquishment of a contract right to similar improvements against one of the property owners included in the LID. We find this to be a distinction without a difference in light of the court's reasoning in *Kasper*. The court posed the issue of that case as follows:

> Viewed from a slightly different vantage point, the basic issue is whether the legislature intended to allow a municipality to deprive property owners of their right of protest when the municipality involved proposes to provide, from one fund or another, more than 40 per cent of the amount required to finance the local improvement.

*Kasper,* at 800.

The court thus concluded, at page 803:

> It seems very unlikely that the legislature would put the power to prohibit protests completely in the unguided discretion of cities and towns. The right of protest is the property owners' limitation on a municipality's power of

assessment; in the absence of a clear statement, should a municipality be allowed to control its own limitations?

(Footnote omitted.)

We believe that by relinquishing its contract rights against Smith, the City of Tukwila essentially contributed the value of the contract rights to the LID, thereby exerting a good measure of control over the limitation imposed by RCW 35.43.180. As such, it indirectly accomplished through relinquishment of a matured contract right what it could not directly accomplish through the allocation of funds, *i.e.,* the deprivation of a property owner's right to protest an LID.

As stated by Judge Ringold in his dissenting opinion:

The power of a municipality to include in the total cost computation the value of an improvement to which it is already entitled constitutes just as great a control of its own limitations as the power of a municipality to contribute its own funds to the total cost; the rights of the remaining property owners are manipulated by the municipality in either case. Both of these methods of computation are violative not only of the principle of the *Thymian* and *Kasper* cases, but also of the praecept fundamental to our system of government that ours is a government of laws, not of men. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 163, 2 L. Ed. 60 (1803).

*Esping v. Pesicka,* 21 Wn. App. 96, 99, 583 P.2d 671 (1978).

Accordingly, we conclude that the value of the contract rights which the City contributed to the project must be excluded from the total cost of the improvement in determining whether the protesting homeowners constitute the necessary percentage to block the formation of the LID. The present value of the City's rights under the contract has not been established. Since Smith has partially developed his property and his obligation to provide improvements and utilities has thus matured, the value of the City's contractual rights can be determined by the trial court.

The matter is reversed and remanded to the trial court with directions to determine the monetary value of the

contractual rights which the City relinquished. The trial court is further ordered to exclude the value of the rights from the total cost of the improvement and then to reconsider petitioners' challenge to the LID formation in accordance with this decision.

UTTER, C.J., ROSELLINI, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., and ALEXANDER, J. Pro Tem., concur.