[No. 4143–3–III.   Division Three.   April 16, 1981.]

WILFRED FORSGREEN, ET AL, *Appellants,* v. THE CITY
OF SPOKANE, ET AL, *Respondents.*

*James A. McDevitt* and *Reed, Otterstrom & Giesa,* for appellants.

*James C. Sloane, Corporation Counsel,* and *Thomas F. Kingen* and *Scott C. McKee, Assistants,* for respondents.

GREEN, J.—On September 17, 1979, the City of Spokane adopted an ordinance for the construction of a trunk sewer along the northern boundary of the city. A local improvement district (LID) known as "Indian Trail Trunk Sewer

District" was formed. This district included property both within and outside the city. The petitioners' properties located in the county were included in the LID and assessed a portion of the construction costs. They protested formation of the LID but were found to have an insufficient number of signatures to invalidate it. They then commenced this action for a writ of review and prohibition. The City was granted summary judgment and petitioners appeal. We affirm.

Petitioners challenge: (1) the City's jurisdiction to form an LID including property outside the city without first submitting a proposal to the Boundary Review Board; (2) the boundaries of the LID and the proposed assessments.

A city may form local improvement districts "composed entirely or in part of unincorporated territory outside of [the] city . . ." RCW 35.43.030. An LID may be formed for the construction of a trunk sewer which

shall include as nearly as possible all the territory which can be drained through the trunk sewer and subsewers connected thereto;

RCW 35.43.040(7). The land within the LID may be assessed by the City for the cost of the system. RCW 35.43.040(2).

First, petitioners contend the City did not have jurisdiction to form the LID. They argue inclusion of their property in the LID indicates the City *contemplates* extension of sewer service to property outside its corporate limits; therefore, the City's proposal must be approved by the Boundary Review Board before formation of the LID. It is further argued unless the Board reviews the project at the formation stage, it will later have no alternative but to grant the extension of sewer service because property owners will already have paid the assessments. We do not find this position meritorious under the controlling statutes.

The purpose of the Boundary Review Board is to "provide a method of guiding and controlling the creation and growth of municipalities . . ." RCW 36.93.010. To this

end, RCW 36.93.090 provides:

> Whenever any of the following described actions are proposed in a county in which a board has been established, the initiators of the action shall file a notice of intention with the board, which may review any such proposed actions pertaining to:
>
> . . .
>
> (4) The extension of permanent water or sewer service outside of its existing corporate boundaries by a city, town, or special purpose district.

This statute applies only to the extension of permanent service outside the boundaries of a city. *Whitworth Water Dist. 2 v. Spokane,* 15 Wn. App. 634, 550 P.2d 1181 (1976). It does not apply to contemplated extensions.

Nothing in the record indicates that the City proposes any extension of service to property outside the city. To the contrary, a city employee's affidavit states the creation of the district will not provide a permanent sewer to persons in the LID. Instead, it is contemplated that owners desiring to use the trunk sewer will petition for construction of lateral sewer lines. A construction engineer's affidavit points out that areas outside the city were assessed because the trunk sewer is capable of eventually draining those areas. However, further construction will be necessary before connections can actually be made.

The City is required to include within the local improvement district "as nearly as possible all the territory which can be drained through the trunk sewer . . ." RCW 35.43-.040(7). Petitioners' property was included in the LID only because it was within the drainage basin. Since the trunk line is entirely within the city, it could be built without intervention of the county or the board. Therefore, the City has *jurisdiction* to authorize construction of the trunk line and create an improvement district to pay for it. This determination does not foreclose petitioners from objecting to the validity or amount of their assessments at a subsequent hearing provided by RCW 35.44.070.

Second, petitioners contend the City consciously structured the LID boundaries to deny them their right to pro-

test its creation. They support this contention by pointing out (1) the boundaries do not conform to the natural drainage basin, and (2) their property, being more than 1 mile from the trunk line, was assessed a lesser amount than property closer to the trunk line thereby diluting the effectiveness of their protest.

■ The City has broad discretion in establishing LID boundaries and petitioners must show its action was clearly arbitrary. *Citizens for Underground Equality v. Seattle,* 6 Wn. App. 338, 343, 492 P.2d 1071, 51 A.L.R.3d 943, *review denied,* 80 Wn.2d 1009 (1972). A city affidavit states the drainage basin boundaries were modified to facilitate the legal description of the LID and conform with existing road patterns which would dictate future platting and sewer placement. Petitioners have presented no evidence that the City's determination was arbitrary or their situation would differ if the boundaries conformed to the natural drainage basin.

RCW 35.43.180 provides a city can be deprived of jurisdiction to proceed with an LID upon the filing of a protest by

> the owners of property which is within the proposed local improvement district . . . but outside the boundaries of the city . . . and which is subject to sixty percent or more of that part of the total cost of the improvement allocable to property within the proposed local improvement district . . . but outside . . . the city . . .

The City submitted uncontroverted evidence that the protest filed by the petitioners contained less than 35 percent of the landowners outside the city by valuation, less than 39 percent of the land by area, and fewer than 40 percent of the landowners who were similarly assessed. These figures show that even if petitioners were assessed at the same rate as other landowners within the county, they would not have borne 60 percent of the improvement cost allocable to county property. Thus, petitioners' second contention must fail.

Finally, petitioners contend their property should not

have been assessed or included within the LID because it would receive no special benefit until a future LID is formed to connect to the trunk line. As noted earlier, inclusion of petitioners' property within the LID was statutorily authorized. The validity or extent of the assessments can be raised only in a subsequent hearing on the assessment roll. *Citizens for Underground Equality, supra* at 342. This contention is, therefore, premature.

Affirmed.

McINTURFF, C.J., and ROE, J., concur.

Reconsideration denied May 20, 1981.

Review denied by Supreme Court July 17, 1981.