· [No. 31495. Department One. November 30, 1950.]

F. K. HARGREAVES *et al.*, *Appellants*, v. MUKILTEO WATER
DISTRICT, *Respondent.*[1]

*Leslie R. Cooper*, for appellants.

*O. D. Anderson* and *J. P. Hunter*, for respondent.

BEALS, J.—A petition filed with the commissioners of the
Mukilteo water district, requesting the installation of a
water distribution system, resulted in the creation of local
improvement district No. 16 for that purpose. The district
embraces approximately three hundred eight acres of land

[1] Reported in 224 P. (2d) 1061.

north of Mukilteo, is irregular in shape, and extends eastward from Puget Sound. The land within this local improvement district (hereinafter referred to as the district) varies greatly as to topography, soil, and adaptability for improvement. It seems that the district was entirely without a water distribution system, and plans for such a system were prepared, which, it was considered, would benefit the land within the district in the amount of fifty thousand dollars. The cost of the improvement was $48,764.

The commissioners prepared an assessment roll and, after they had confirmed it, several property owners appealed from the order of confirmation to the superior court. for Snohomish county, which, after a hearing, disapproved the assessment roll and declared the same void. No appeal was prosecuted to this court from that order of the superior court, and the commissioners thereafter prepared and, by resolution, confirmed a reassessment roll which, on appeal by certain property owners, was confirmed by order of the superior court entered May 2, 1950.

From this order of confirmation, several of the property owners have appealed to this court, making the following assignment of errors:

"The Court erred:

"(1)   In holding that the reassessment roll was spread in accordance with Rem. Rev. Stat. 9365—1947 Supplement.

"(2)   In failing to hold that the Commissioners of the Water District were required to spread the assessments in accordance with the zone and termini method in the absence of a provision in the Resolution creating the district providing for a different method of apportionment."

For the purpose of assessing the land within the district for the improvement, the commissioners divided the district into three parcels. Parcel No. 1, the westward portion of the district bordering on Puget Sound, consisted of 71½ acres and was assessed $31,250. Parcel No. 2 contained 87 acres and was assessed $11,250, while parcel No. 3, 150 acres, was assessed $7,500. As these assessments were based upon a total cost of fifty thousand dollars, each amount should be reduced by about two and one-half per cent, be-

cause the cost of the improvement was less than the estimated value of the improvement to the property within the district.

By this method of spreading the assessment for the improvement, the lands in parcel No. 1 were to pay a much larger assessment per front foot (and per square foot) on the water pipe line than the lands lying in parcels Nos. 2 and 3, notwithstanding the fact that, apparently, the cost per lineal foot of laying the pipe line was the same throughout the district, as were the uses to which the water line would be put, namely, domestic and fire protection.

The resolution passed by the commissioners, creating district No. 16, did not contain any provision for the spreading of the assessments to be levied for the improvement, and not until the assessment roll was prepared were the property owners in the district informed that the commissioners were not spreading the assessments throughout the district uniformly, in accordance with the termini and zone method, but were proposing to assess the properties within the district in accordance with the plan above outlined.

By Laws of 1939, chapter 128, § 1, p. 362, Rem. Rev. Stat. (Sup.), § 11587 [P.P.C. § 994-19], an established water district enjoys the power to establish local improvement districts within its territory, to levy special assessments against property "specially benefited by any local improvement on the basis of special benefits to pay" for the improvement, the levying of such assessments and the issuance of authorized bonds to be accomplished in the manner provided by law for the levying of local improvement assessments and the issuance of local improvement bonds by cities of the first class "in so far as the same shall not be inconsistent with the provisions of this act."

By Laws of 1929, chapter 114, § 12, p. 231, Rem. Rev. Stat., § 11590 [P.P.C. § 994-25], the procedure for the establishment of a local improvement district within a water district is outlined. A petition by the majority of the owners of land in the district sought to be improved shall be filed with the water district commission, the commission shall fix a

time for a hearing on the petition, give notice of the date by publication, and, after the hearing, may by resolution order the improvement. The commission shall then prepare an assessment roll "in proportion to the special benefits to be derived by the property in such local improvement district from such improvement," and may approve the roll after publishing a notice as provided in the section, and after hearing any protests which may have been filed.

By Laws of 1947, chapter 155, § 1, p. 717, Rem. Supp. 1947, § 9365, which is entitled, in part, "AN ACT relating to local improvements in cities and towns," the legislature amended the law previously in force by providing "an additional method for creating a local improvement district and making assessments therefor." This statute reads, in part, as follows:

"Every ordinance ordering any improvement mentioned in this act, payment for which shall be made in whole or in part by special assessments, shall establish a local improvement district to be called 'Local Improvement District No. ........,' which district shall embrace as near as may be all the property specially benefited by such improvement.

"Except in the cases herein otherwise specifically provided for, and unless otherwise provided in the ordinance ordering such improvement, such district shall include all the property between the termini of said improvement abutting upon, adjacent, vicinal or proximate to the street, . . . proposed to be improved to a distance back from the marginal lines thereof to the center line of the blocks facing or abutting thereon: . . . All property included within such limits of such local improvement district shall be considered and held to be the property and to be all the property specially benefited by such local improvement, and shall be the property to be assessed to pay the cost and expense thereof or such part thereof as may be chargeable against the property specially benefited by such improvement, which cost and expense shall be assessed upon all of said property so benefited in accordance to the special benefits conferred on such property in proportion to area and distance back from the marginal line of the street or other public way or area improved.

"Said local improvement district shall, for the purpose of ascertaining the amount to be assessed against such sep-

arate lot, tract, parcel of land or other property within said district be divided into subdivisions or zones paralleling the margin of the street, . . . to be improved, said subdivisions to be numbered respectively first, second, third, fourth, and fifth. . . .

"The rate of assessment per square foot in each subdivision shall be fixed on the basis that the special benefits conferred on a square foot of land in subdivisions first, second, third, fourth, and fifth, respectively, are related to each other as are the numbers . . .

*"Whenever the nature of the improvement is such that the special benefits conferred on the property are not fairly reflected by the use of the aforesaid termini and zone method, the ordinance ordering the improvement may provide that the assessment shall be made against the property of the district in accordance with the special benefits it will derive from the improvement without regard to the zone and termini method herein provided."* (Italics ours.)

The only change made in the previous law by the statute above quoted was the addition of the italicized paragraph.

The word "termini," as used in the statute, refers to the boundaries of the assessment district, and the word "zone" refers to strips of land paralleling the margin of the street (or other land) which is the subject of the local improvement, the statute providing for the rate of assessment per square foot in each subdivision (or zone), to be determined in accordance with the statutory method.

It seems clear that the statute as now in force provides two methods, either one of which the water district may follow in assessing the property within the district for the benefits which will accrue from an improvement. The first may be referred to as the "termini and zone method," and the second is that provided for by the italicized portion of the statute above quoted. If the district follows the termini and zone method, the assesssment shall be levied "in accordance to the special benefits conferred on such property *in proportion* [not *and* in proportion] to area and distance back from the marginal line." (Italics ours.) The words italicized apply only to assessments levied pursuant to the termini and zone method.

The trial court, in upholding the method followed by the commissioners of dividing the entire district into three subdivisions and arbitrarily apportioning the cost of the improvement among those subdivisions, did not follow the termini and zone method, but held that, after the improvement had been ordered and the amount of the cost thereof determined, the commissioners could arbitrarily apportion that cost according to their idea of the benefits which would result to the respective subdivisions from the improvement. Following this plan to its logical conclusion, it would seem that commissioners could fix the amount of an assessment to be levied against each lot in an improvement district, in accordance with their ideas of the special benefit to each particular lot.

The last paragraph of the statute, as amended (Rem. Supp. 1947, § 9365), provides that, if the commissioners are of the opinion that a contemplated improvement should be paid for by assessments levied in accordance with their opinion of the special benefits which would accrue from the improvement to "the property of the district," instead of the termini and zone method, the ordinance authorizing the improvement must provide that the assessment shall be levied "in accordance with the special benefits" that the property within the district will derive therefrom.

In the case at bar, the improvement was, of course, not ordered by an ordinance, but by resolution No. 28-A, unanimously adopted May 25, 1948. Sections 2 and 6 of this resolution read as follows:

"*Section 2:* That all of the cost and expenses of such improvement, except such part, if any, as shall be borne by the general water district and/or other sources shall be borne by and assessed against the property included in the assessment district herein created."

"*Section 6:* That the costs and expenses of such improvement, except such part, if any, as shall be borne by the general water district and/or other sources, shall be defrayed by special assessments, payable in ten equal annual installments, with interest thereon at the rate of Five percent (5%) per annum under the mode of 'Payment by Bonds' as provided by law. Bonds bearing interest at the

rate of Five percent (5) per annum, payable on or before twelve years from date of issue, shall be issued in payment of said costs and expenses above mentioned."

The resolution does not even suggest that the improvement was to be paid for by assessments levied in accordance with the arbitrary judgment of the commissioners, based upon their subdivisions of the land within the district, as disclosed by the record.

Respondent does not here contend that the last paragraph of the statute applies, arguing that the trial court correctly ruled that, in spreading the assessments, the commissioners followed a termini and zone method of apportioning assessments, in accordance with the statute. In this, the trial court erred.

A street improvement, such as a water (or other) pipe line, outside of possible differences in excavation, costs approximately the same amount per lineal foot for installation. In the statute, the words "special benefits" are used in contrast to *general* benefits which would not support assessments for *special* benefits.

If the method approved by the trial court were held to be correct, it would seem that the termini and zone method would be useless, because the commissioners could arbitrarily fix special benefits in accordance with the exercise of their judgment.

The installation of a water pipe line is, of course, a special benefit to land which fronts upon the improvement. The same is true of a sewer line, whereas a trunk sewer would be of benefit to a greater area which, by laterals, may avail itself of the trunk line.

In the case at bar, the engineer who advised the district commissioners concerning the spreading of the assessments for the improvement, testified that there were approximately the same number of lineal feet of water pipe line in parcels Nos. 1 and 2. As above stated, the commissioners assessed the abutting land in parcel No. 1 $31,250, while the assessments against the abutting land in parcel No. 2 amounted to $11,250.

Respondent cites several of our decisions in support of its contention that the order appealed from should be affirmed.

In the case of *In re Grandview*, 118 Wash. 464, 203 Pac. 988, this court, in an action by property owners, affirmed an order of the superior court annulling an assessment roll spread by the town council, which had, by ordinance, established nine local improvement districts for the purpose of constructing a sewer system consisting of a trunk sewer and laterals. The district covered a large area, including business and residence property as well as acreage. The assessment was levied pursuant to Laws of 1911, chapter 98, § 15, p. 449, Rem. Rev. Stat., § 9367 [P.P.C. § 401-29], which provided for the construction of trunk sewers and water mains. The court called attention to the fact that the statute referred to provided that, in the case of trunk sewers, the district to be assessed should " 'include as near as may be all the territory which can be sewered or drained through such trunk sewer and the subsewers connected thereto' "; that abutting property should be assessed such amounts as would represent the reasonable cost of a local sewer, and that

" '. . . the remainder of the cost and expense of such improvement shall be distributed over and assessed against all of the property within the bounds of said entire district in accordance with the special benefits conferred thereon and in proportion to area.' "

As above stated, in the case at bar, the assessment was levied pursuant to Rem. Supp. 1947, § 9365. The case cited is not in point here, because of the difference between the statutes pursuant to which the respective assessments were levied.

In the case of *In re Westlake Avenue*, 40 Wash. 144, 82 Pac. 279, this court reversed an order of the superior court confirming an assessment roll made by commissioners for the purpose of paying the cost of the establishment and extension of Westlake avenue in the city of Seattle. The improvement was of benefit to large areas not bordering upon

the street and to the city at large. The cost for the taking and damaging of private property was apportioned between the property specially benefited and the city. The case is not here in point.

Respondent cites *Vancouver v. Corporation of the Catholic Bishop of Nisqually*, 90 Wash. 319, 156 Pac. 383, in which an appeal was prosecuted by the defendant property owner from an order of the superior court confirming an assessment roll for a public improvement. The opinion of the court does not indicate under what law the assessment was levied, but, from the dissenting opinion of Judge Chadwick, it appears that the assessment was based upon an alleged improvement resulting from an order of condemnation entered by an eminent domain commission. Evidently, a portion of defendant's property was condemned for street purposes, and the street was opened and improved. The case is not here in point.

Respondent also cites *In re California Avenue*, 30 Wn. (2d) 144, 190 P. (2d) 738, in which it appeared that the city commissioners of Everett had established a local improvement district for the purpose of placing sidewalks on both sides of California avenue in a small defined district. On one side of the street stood eleven shade trees which had to be removed to permit the improvement. The commissioners, in levying the assessment for the improvement, charged the cost of removing the trees to the property on the side of the street where the trees had stood. On appeal to the superior court, the assessment roll was set aside and, thereafter, the commissioners approved an assessment roll assessing ninety-five per cent of the cost of removing the trees to the same property. On appeal to the superior court, this assessment roll was confirmed. On appeal to this court, the order was reversed, this court holding that equal assessments should be levied against the property on both sides of the street. The case nowise supports respondent's contentions.

Respondent strongly relies upon the case of *Towers v. Tacoma*, 151 Wash. 577, 276 Pac. 888, in which property

owners appealed from an order confirming an assessment roll levied over a large district to pay for a trunk sewer. The assessment had been levied pursuant to Rem. Rev. Stat., § 9367. In reversing the order appealed from, this court said:

". . . Here, there was no attempt whatever to *first* assess against the property to the center of the blocks on each side of the trunk sewer between its termini, such amounts as would equal the reasonable cost of a local sewer, and *then* distribute the remainder of the total cost over all the property in the district in accordance with the special benefits conferred thereon and in proportion to area. Here, as already stated, all the property in the whole district was assessed uniformly at so much per square foot to pay the total cost of the improvement."

The statute referred to recognizes that the installation of a trunk sewer benefits property other than that which borders directly on the improvement. The case cited is not here in point.

None of the cases cited by respondent construe Rem. Supp. 1947, § 9365, pursuant to which the water line here in question was installed.

In *State ex rel. Johnson v. Dayton*, 200 Wash. 91, 93 P. (2d) 909, we said:

"But the fact that both the front foot and zone methods of assessment sometimes result in gross inequalities does not make such methods of assessment *ipso facto* void, where, as under our statutes, the procedure affords to each individual property owner his day in court and the right to file written objections and to appeal in case they are over-ruled."

Pursuant to the statutes of this state as they existed prior to the 1947 amendment, such assessments for local improvements as that here in question have been consistently levied against the property benefited in accordance with the termini and zone method.

In the case at bar, the resolution adopted by the commissioners contained no provision to the effect that assessments for the improvement should be based upon

special benefits that the property "will derive from the improvement without regard to the zone and termini method herein provided." Rem. Supp. 1947, § 9365, *supra.*

As above stated, respondent does not contend that, in the absence of any such provision, the resolution adopted by the commissioners brings the assessments levied against the property of the district within the purview of the amendment. No question concerning any authority vested in the commissioners by the amendment referred to is presented by the case at bar.

In dividing the lands within the local improvement district into three separate parcels for the purpose of levying assessments on account of the improvement, and in spreading the assessments as they did, the commissioners acted without statutory authority, and the trial court erred in confirming the assessments as contained in the roll prepared by the commissioners.

The order appealed from is, accordingly, reversed, with instructions to vacate the assessments levied against the lands owned by the appellants herein and to remand the proceeding to the commissioners of the Mukilteo water district, with directions to reassess appellants' properties in accordance with the statute.

SIMPSON, C. J., GRADY, HILL, and DONWORTH, JJ., concur.

---

March 15, 1951. Petition for rehearing denied.