[No. 7178–9–II. Division Two. December 31, 1985.]

TIME OIL COMPANY, *Appellant,* v. THE CITY OF PORT ANGELES, *Respondent.*

*Richard Gordon,* for appellant.

*Craig D. Knutson, City Attorney,* for respondent.

WORSWICK, C.J.—Time Oil Company appeals a superior court judgment confirming a local improvement district assessment. We are asked to decide: (1) whether the front foot method of assessment is invalid as a matter of law; (2) if not, whether the city council determined that the front foot method more fairly reflects the special benefits to the property assessed than does the square foot "termini and zone" method; and (3) whether the assessment was imposed in an arbitrary and capricious manner or was calculated on a fundamentally wrong basis. We affirm.

In 1981, the City established local improvement district 203, a beautification project intended to revitalize downtown Port Angeles. The LID included installation of street furniture and pedestrian–oriented lighting, the planting of trees, and the repair or replacement of sidewalks. The final cost to be borne by the property within the LID was

$824,831.43. Assessments were calculated by the front foot method. Time Oil owns a 4–lot corner parcel, on which it operates a self–service gas station. The final assessment against its property came to $20,133.32.

The City followed the steps required by law before adopting the implementing ordinance. On November 30, 1979, it mailed notices to the affected property owners, informing them of its intent to order the improvements, estimating the cost each parcel would bear, and advising the owners of their right to file a written protest at or before the public hearing on improvement resolution 35.79. The assessment on Time Oil's property was estimated at $19,527.19.

At the first public hearing on December 18, 1979, Time Oil's attorney raised many objections to including Time Oil in the LID. Alternatively, he requested a different method of valuation, arguing that Time Oil was more severely affected by use of the front foot method than were other property owners. He contended that because its property is triangular and fronts city streets on two sides, Time Oil would be subjected to an unfairly high assessment. The council passed the resolution as drafted and adopted ordinance 2049, thereby creating the LID.

Time Oil filed a formal protest within the 30–day protest period that followed. On May 5, 1981, the council held a second public hearing, this time on the final assessment role. Time Oil's attorney again protested. He presented a local realtor who opined that Time Oil's property would not be benefited by the improvements. The attorney also asked for a continuance to enable him to submit a formal appraisal. The council closed the hearing without granting the continuance.

On July 7, 1981, the council convened as a board of equalization to consider all protests. Time Oil's attorney asked the council to reopen the public hearing to consider additional information on Time Oil's behalf. The council refused, denied all protests, and adopted the ordinance as written, thereby confirming the final assessment roll. On

Time Oil's appeal, the Superior Court also confirmed the assessment.

Time Oil's first contention here is that the front foot method of assessment is invalid as a matter of law. We hold it is not.

■ Two sections of the statute are relevant:

Assessment district—All property to be assessed—Basis. All property included within the limits of a local improvement district or utility local improvement district shall be considered to be the property specially benefited by the local improvement and shall be the property to be assessed to pay the cost and expense thereof or such part thereof as may be chargeable against the property specially benefited. The cost and expense shall be assessed upon all the property *in accordance with the special benefits conferred thereon in proportion to area and distance back* from the marginal line of the public way or area improved.

(Italics ours.) Former RCW 35.44.010.

Other methods of computing assessments may be used. Notwithstanding the methods of assessment provided in RCW 35.44.030, 35.44.040 and 35.44.045, the city or town may use any other method or combination of methods to compute assessments *which may be deemed to more fairly reflect the special benefits to the properties being assessed.* The failure of the council to specifically recite in its ordinance ordering the improvement and creating the local improvement district *that it will not use the zone and termini method of assessment shall not invalidate the use of any other method* or methods of assessment.

(Italics ours.) RCW 35.44.047. Time Oil concedes, as it must, that the City is not limited to one assessment method. Nevertheless, it argues, no method is valid unless consistent with the italicized portion of RCW 35.44.010, and the front foot method is not. We conclude that the front foot method need not be consistent with the italicized language.

*Hargreaves v. Mukilteo Water Dist.,* 37 Wn.2d 522, 224 P.2d 1061 (1950) specifically held that this language applies

only when a particular method described in the statute, the square foot "termini and zone" method, is used.[1] It does not apply when another, otherwise valid, method is selected.[2] *See also In re Schmitz,* 44 Wn.2d 429, 268 P.2d 436 (1954). The front foot method is not invalid as a matter of law. *Accord, State ex rel. Johnson v. Dayton,* 200 Wash. 91, 93 P.2d 909 (1939).

 Time Oil next contends that even if the front foot method is valid, it cannot be used here because the council failed to make a determination that it would "more fairly reflect [*sic*] the special benefits to the properties being assessed." RCW 35.44.047. Time Oil seems to argue that formal determination of this fact by ordinance is required. Although a formal determination would be desirable, because it would help the courts in reviewing these matters,

---

[1]*Hargreaves* probably referred to the "termini and zone" method because the predecessor statute of section .047 used that language, as does section .047. Examination of the statutes, then and now, will reveal that this language refers to boundaries of, and internal areas within, an LID. The "method" contemplated is the square foot method.

[2]Time Oil's argument has a superficial appeal based on the present arrangement of statutory language within RCW. However, it does not withstand analysis. Although the order in which the language Time Oil relies on has been rearranged, there has been no change in substance since *Hargreaves. See* Laws of 1947, ch. 155, § 1, p. 717; Laws of 1957, ch. 144, § 16, p. 526; Laws of 1965, ch. 7, § 35.44-.010, p. 244; Laws of 1967, ch. 52, § 9, p. 263.

Similarly we find no change in legislative intent because of the addition of section .047 in 1969. Laws of 1969, 1st Ex. Sess., ch. 258, § 7, p. 2408. The 1947 statute contained the following language:

> Whenever the nature of the improvement is such that the special benefits conferred on the property are not fairly reflected by the use of the aforesaid termini and zone method, the ordinance ordering the improvement may provide that the assessment shall be made against the property of the district in accordance with the special benefits it will derive from the improvement without regard to the zone and termini method herein provided.

Laws of 1947, ch. 155, § 13, p. 720. Again, the 1957, 1965 and 1967 statutes contain almost identical language, then codified at RCW 35.43.080. A careful reading of RCW 35.44.047 leads us to conclude that the first sentence of the section is simply a recodification in modern terms of the 1947 statute. The second sentence, which expands rather than limits the city's discretion, is apparently a response to restrictive holdings in *Hargreaves* and *In re Schmitz,* 44 Wn.2d 429, 268 P.2d 436 (1954).

we hold that it is not necessary, and that an appropriate determination was made in this case.

The statute does not require formal action, and we have found no authority, nor has any been cited to us, imposing such a requirement. We do conclude, however, that some evidence must appear in the record from which a reviewing court can conclude that this determination has been made. Notwithstanding Time Oil's contention to the contrary,[3] we find sufficient evidence in the record before us.

At the hearing, in response to Time Oil's objection to the front foot method, the cochairman of the downtown development group said that the finance department recommended the front foot method because, based on past experience with a different method, it was as fair as possible. The city manager emphasized that the City used the front foot method because the LID is in a central business district, rather than a residential area where a different method is usually used. He stated: "I think the city council recognized the uniqueness of the Central Business District and chose to use an assessment method which was fairest for all properties concerned . . . [it was] a method that was most acceptable to the downtown people and which the council chose to be most fair and equitable to the entire district." We are satisfied from this that the council made the determination contemplated by RCW 35.44.047.

Time Oil's final contention is that the council's actions in adopting the assessment were arbitrary and capricious, and that the assessment was calculated on a fundamentally wrong basis. Reduced to essentials, Time Oil's argument simply is that the evidence it presented shows that the assessment will not benefit its property, and if not, it should have had a continuance to allow it to produce such evidence.[4] We are not persuaded.

---

[3]Time Oil points to isolated statements by the mayor and one council member, taken out of context, that the front foot method might be unfair to Time Oil.

[4]Inasmuch as Time Oil's position focuses on its own assessment without reference to the entire LID, there is no merit in its assertion that the assessment was

■ Certain principles governing judicial review are relevant here. A reviewing court must confirm the assessment roll unless "such assessment is founded upon a fundamentally wrong basis and/or the decision of the council . . . was arbitrary or capricious; . . ." RCW 35.44.250. Review is only upon the record before the council. *Abbenhaus v. Yakima,* 89 Wn.2d 855, 859, 576 P.2d 888 (1978). It is presumed that the City acted properly. *Abbenhaus,* 89 Wn.2d at 860. It is also presumed that an improvement is a benefit; that an assessment is no greater than the benefit; that an assessment is equal or ratable to an assessment upon other property similarly situated; and that the assessment is fair. *Abbenhaus,* 89 Wn.2d at 861. Review is limited to the propriety of the process; it does not involve any independent consideration of the merits. *Abbenhaus,* 89 Wn.2d at 859.

We do not reach Time Oil's contention that the assessment method was arbitrary and capricious as applied to its property, because Time Oil failed to overcome the *Abbenhaus* presumptions. Time Oil attempted to present evidence as to value. *See In re Local Imp. 6097,* 52 Wn.2d 330, 324 P.2d 1078 (1958); *In re Indian Trail Trunk Sewer Sys.,* 35 Wn. App. 840, 670 P.2d 675 (1983), *review denied,* 100 Wn.2d 1037 (1984). It produced one witness and the City produced none. However, the testimony of Time Oil's witness did not help Time Oil.

■ The benefit conferred by an assessment is measured by the difference between the fair market value of the property immediately before and after the improvement. *In re Local Imp. 6097,* 52 Wn.2d at 333; *In re Schmitz,* 44 Wn.2d 429, 434, 268 P.2d 436 (1954). Fair market value means

neither a panic price, auction value, speculative value nor a value fixed by depressed or inflated prices. [It is] the

---

calculated on a fundamentally wrong basis. We held in *Cammack v. Port Angeles,* 15 Wn. App. 188, 548 P.2d 571 (1976) that this term refers to a mistake so fundamental as to require invalidation of the entire LID.

amount of money which a purchaser willing, but not obliged, to buy the property would pay an owner willing, but not obligated, to sell it, taking into consideration all uses to which the property is adapted and might in reason be applied.

*Donaldson v. Greenwood,* 40 Wn.2d 238, 252, 242 P.2d 1038 (1952); *In re Schmitz, supra.*

Time Oil's witness said: "it is my feeling that the seller will receive no additional benefit with regards to the sales price in the future from this LID on his property." When questioned by the city attorney, he stated that he used an income–based analysis to reach this opinion. He did not, however, produce any information to support his position. Pressed further, he admitted that he was unaware of any present information on which to base a comparison of before and after improvement values using the income method.

He also stated that the property would not increase in value after the improvements, basing this on his observation that, to offset the LID cost, Time Oil would have to sell the property at a higher price than competitors in other gas stations, and that the improvements would only benefit property owners whose businesses cater to pedestrian traffic. When asked whether a gas station is the best use for Time Oil's property, he answered that a restaurant could be put in, although he thought that there might be a problem with the current zoning. He did not analyze the property under any other zoning nor did he know if the property could be rezoned.

Not only did the witness's opinions fall short of establishing before and after values (*In re Local Imp. 6097, supra; In re Schmitz, supra; In re Indian Trail*), the foundation was inadequate. An expert opinion must be based on facts, not speculation or conjecture. *Prentice Packing & Storage Co. v. United Pac. Ins. Co.,* 5 Wn.2d 144, 106 P.2d 314 (1940); *Theonnes v. Hazen,* 37 Wn. App. 644, 681 P.2d 1284 (1984). The testimony of Time Oil's witness was altogether inadequate.

■ Finally, we disagree with Time Oil's contention that denial of its request for a continuance was arbitrary and capricious. Arbitrary and capricious action is

willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action. Where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous.

*Abbenhaus,* 89 Wn.2d at 858–59.

At the May 5 hearing, the council indicated that its denial of the continuance was premised on a belief that Time Oil had already been given adequate time to prepare its case. The original assessment, received by Time Oil in November 1979, differed from the final assessment, received by Time Oil in April 1981, by less than $600; thus, Time Oil had been on formal notice of the assessment amount for almost 18 months. The council understandably was motivated to move the LID process to a conclusion. It considered the circumstances surrounding Time Oil's request; there was certainly room for two opinions concerning it. The decision was not arbitrary and capricious.

Affirmed.

PETRICH and ALEXANDER, JJ., concur.

Reconsideration denied February 6, 1986.