[No. 56188–5. En Banc. March 1, 1990.]

THE CITY OF SEATTLE, *Respondent,* v. ROGERS CLOTHING FOR MEN, INC., *Petitioner.*

THE CITY OF SEATTLE, *Respondent,* v. GRAND FURNITURE COMPANY, INC., *Petitioner.*

*Reed McClure Moceri Thonn & Moriarty,* by *Michael S. Rogers,* for petitioners.

*Douglas N. Jewett, City Attorney,* and *Jorgen G. Bader, Assistant,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

In this case we consider whether a Seattle city ordinance establishing a special assessment area in downtown Seattle exceeded its statutory basis or violated the Constitution of the State of Washington. We hold that the ordinance is constitutional and that Seattle did not exceed its statutory authority by enacting it.

In 1971, the Legislature enacted RCW 35.87A allowing municipalities to establish "Parking and Business Improvement Areas". This statute authorizes a city to establish such an area after a petition is submitted by the businesses

responsible for 60 percent of the assessments within the area.[1]

In 1986, Seattle passed Seattle City Ordinance 113015 which established the "Downtown Seattle Retail Core Business Improvement Area" (Business Improvement Area) extending from Second Avenue to Seventh Avenue and from Stewart Street and Olive Way to Union Street.[2] The ordinance was enacted pursuant to authority provided by RCW 35.87A. In accordance with that chapter (RCW 35.87A.010(1)), a petition had been signed by more than 60 percent of the businesses within the designated Business Improvement Area. The trial court found and concluded that the ordinance reflects and follows the initiating petition.

The ordinance at issue imposes special assessments to be used for two programs, a "Marketing Program" and a "Common Area Maintenance Program". The Marketing Program promotes the retail core area by such services as decorating and beautifying public places in the Business Improvement Area, maintaining informational and directional signing for pedestrians, and improving public relations. The Maintenance Program maintains the appearance of the Business Improvement Area by such services as sweeping sidewalks, cleaning and erasing graffiti, maintaining flowers and greenery, providing litter receptacles and providing security. The ordinance provides that all such activities are supplemental to, and not replacements of, regular city maintenance.[3]

Rogers Clothing for Men, Inc., and Grand Furniture Company, Inc. (hereafter referred to as the petitioning store owners) are retailers located within the Business

---

[1] RCW 35.87A.010(1).

[2] The area encompasses The Bon Marche', Frederick & Nelson, Nordstrom, a number of large office buildings, three major hotels, parking garages, as well as a number of small shops.

[3] Seattle City Ordinance 113015, § 2.

Improvement Area. The City of Seattle brought this action in municipal court to collect the special assessments levied against these petitioning store owners pursuant to the ordinance.[4] The petitioning store owners argue that the ordinance exceeds the authority of the enabling statute, violates Const. art. 7, § 1 (amend. 14) relating to taxation, and also violates Const. art. 7, § 9 and the equal protection clauses of the state and federal constitutions. The two cases were consolidated and tried in Seattle Municipal Court. That court entered judgment against the petitioning store owners. That decision was appealed to the Superior Court which affirmed the judgment and adopted the findings of fact of the Municipal Court. The Court of Appeals, Division One, determined that the case involved an issue of broad public import requiring prompt and ultimate determination and ordered the case certified to this court. This court accepted review.

The findings of fact and the record certified to us show that the City contracted with the "Downtown Seattle Association" (Association) to manage the program for the Business Improvement Area. The Association secures guidance from an advisory board of Business Improvement Area ratepayers. The record also reflects, and the litigants agree, that each business within the Business Improvement Area has one vote on the advisory board regardless of the size of that business' assessment.

During the 1986–87 fiscal year, the Association carried out a number of programs. It contracted with the YMCA to hire youth to sweep sidewalks in the Business Improvement Area every weekday. It arranged for advertising and conducted a number of activities, celebrations and events in the Business Improvement Area. The Association entered into contracts with the Municipality of Metropolitan Seattle (METRO) and the City.

---

[4]The assessment, delinquency charge and interest sought from Rogers for the 1986–87 fiscal year was $1,100.11, and from Grand was $2,030.52.

The trial court found that during the 1986–87 program–year revenues to downtown Seattle businesses generally increased 4.7 percent over the preceding year, and that this increase reflected the advertising, activities and cleanup work done by the Association. The record reflects this study was not confined solely to businesses within the Business Improvement Area. However, the economist who conducted the study testified that the 4.7 percent increase was indicative of retail sales of small businesses in the Business Improvement Area. The petitioning store owners offered no retail figures, nor did they offer any figures on the value of their respective properties.

The court found that METRO and the City are engaged in major construction projects in downtown Seattle which have an adverse effect on downtown shopping. In early 1986 the City's economist had projected that without business promotion the construction would cause a major slowdown in business revenues.

Some activities conducted by the Association included events scheduled outside the Business Improvement Area. The programs also had some spillover value to businesses outside the Business Improvement Area. The court found, however, that the Association had apportioned the costs among its own funds, the Business Improvement Area funds and its contracts with METRO and the City, and had charged to Business Improvement Area funds only so much of the costs as it deemed were reflective of activities within the Business Improvement Area and advertising that benefited the Business Improvement Area. The court found that the store owners had not shown the apportionment was unreasonable.[5]

---

[5]Appellant's brief does not assign error to the Municipal Court's findings of fact or to their confirmation by the Superior Court. The facts therefore become verities. *Metropolitan Park Dist. v. Griffith*, 106 Wn.2d 425, 723 P.2d 1093 (1986). Appellants mention in their reply brief that they excepted to findings of fact 12, 13, and 14 in their cover letter to the Agreed Report of Proceedings. RAP 10.3(g) in relevant part provides:

The trial court found that the Business Improvement Area program had produced an opportunity to benefit well in excess of the assessments for each store owner. It found Rogers and Grand had benefited from the sidewalk cleaning outside their stores, that they could take advantage of the extended parking hours program and benefited from the increased downtown pedestrian traffic from the Business Improvement Area program.

The amount of assessments is based upon type of use and square footage. The ordinance divides business space into a number of classifications: (a) developed ground floor business space; (b) individual commercial retail sales space at the basement level or on the second or third floors; (c) major multilevel retail stores with more than 100,000 square feet under single ownership; (d) parking garages and surface parking lots; and (e) other uses (hotels, theaters). Then each classification is assessed separately for the Marketing Program and the Common Area Maintenance Program. All classes are assessed for ground floor per square foot. Class (b) is assessed for basement, second and third floors while class (c) is assessed for ground floor and the "next" floor. The effect of this is that the large multilevel department stores are assessed for their ground floor footage and one other floor, while other retailers (with less than

---

A separate assignment of error for each finding of fact a party contends was improperly made or refused must be included with reference to the finding or proposed finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

RAP 10.4(c) provides in relevant part:

    If a party presents an issue which requires study of a . . . finding of fact, . . . the party should type the material portions of the text out verbatim or include them by facsimile copy in the text or in an appendix to the brief.

The store owners' brief makes no assignment of error regarding the findings of fact and no argument as to why the findings are not supported by the record. The City's reply brief therefore had no opportunity to counter such a challenge by reference to the record and correctly assumes that we will consider the findings to be verities on appeal. Nonetheless, we have reviewed the Agreed Report of Proceedings and it appears to us that the Superior Court did not err in determining that the findings of fact are supported by substantial evidence.

100,000 square feet) are assessed for all floors. Additionally, there is a dollar amount ceiling of $28,000 for any one business.[6]

We now address the six issues raised by the petitioning store owners.

## ISSUES

ISSUE ONE. Does the City of Seattle ordinance in question exceed the statutory authority granted to the City by RCW 35.87A?

ISSUE TWO. Is the purpose for which the assessment is levied a *benefit* to businesses within the contemplation of RCW 35.87A.010 *et seq.* and article 7, section 9 of the Constitution of the State of Washington?

ISSUE THREE. Are the benefits delineated by the ordinance "special" or local benefits to the assessed property as contrasted with general benefits which inure to the entire community?

ISSUE FOUR. Which party to this litigation had the burden of proving that the assessments did not substantially exceed the benefit and was such burden carried?

ISSUE FIVE. Is the assessment a "special tax" which is invalidly assessed against only a portion of the property within the City's jurisdiction in violation of the uniformity requirement of article 7, section 1 (amend. 14) of the Constitution of the State of Washington?

ISSUE SIX. Does Seattle City Ordinance 113105 violate constitutional equal protection guaranties?

## DECISION

ISSUE ONE.

CONCLUSION. The city ordinance at issue does not exceed the City's statutory authority under RCW 35.87A.

■ Article 7, section 9 of the Constitution of the State of Washington states in relevant part:

---

[6]Seattle City Ordinance 113015, §§ 3, 4.

The legislature may vest the corporate authorities of cities, . . . with power to make local improvements by special assessment, or by special taxation of property benefited.

As this provision makes clear, the power of the city in this regard is dependent upon authority delegated to it by the Legislature.[7] The power to tax does not exist in a municipality absent a legislative grant of authority.[8] Therefore, the threshold issue is whether the city ordinance violated or exceeded the State's statutory grant of authority.

The purposes of RCW 35.87A are to aid general economic development and facilitate merchant and business cooperation which assists trade. The chapter authorizes cities to establish "parking and business improvement areas" for the purposes of

(a) The acquisition, construction or maintenance of parking facilities for the benefit of the area;
(b) Decoration of any public place in the area;
(c) Promotion of public events which are to take place on or in public places in the area;
(d) Furnishing of music in any public place in the area;
(e) Providing professional management, planning, and promotion for the area, including the management and promotion of retail trade activities in the area; or
(f) Providing maintenance and security for common, public areas.

RCW 35.87A.010(1) (part).

The city ordinance spells out, although in somewhat greater detail, a similar list of improvements.[9] The trial court essentially found that the Business Improvement Area funds were spent on cleaning sidewalks, carrying out a marketing plan by advertising and promotional activities and events. All of these activities are within the purposes of the ordinance and the statute. Therefore, the purposes for

---

[7]*San Telmo Assocs. v. Seattle*, 108 Wn.2d 20, 735 P.2d 673 (1987); 14 E. McQuillin, *Municipal Corporations* § 38.06, at 53 (3d rev. ed. 1987); Trautman, *Assessments in Washington*, 40 Wash. L. Rev. 100 (1965).

[8]*Hillis Homes, Inc. v. Snohomish Cy.*, 97 Wn.2d 804, 650 P.2d 193 (1982).

[9]Seattle City Ordinance 113015, § 2.

which the assessments are levied are within those enumerated by statute (RCW 35.87A).

The petitioning store owners further argue that by calculating assessments based on square footage, the ordinance violates the statute by failing to indicate factors showing the special benefit.

■ RCW 35.87A.080 provides in relevant part:

> For purposes of the special assessments to be imposed pursuant to this chapter, the legislative authority may make a reasonable classification of businesses, giving consideration to various factors such as business and occupation taxes imposed, square footage of the business, number of employees, gross sales, or any other reasonable factor relating to the benefit received, including the degree of benefit received from parking. Whenever it is proposed that a parking and business improvement area provide more than one of the purposes listed in RCW 35.87A.010, special assessments may be imposed in a manner that measures benefit from each of the separate purposes, or any combination of the separate purposes.

The store owners' argument is without merit. This statute enables the city to classify property based upon a list of factors and the factors in the list are expressed in the disjunctive. The statute does not say that the ordinance must explicitly state that the factors are related to the benefit received.

This statute (RCW 35.87A.080) authorizes the City to make a reasonable classification of businesses, "giving consideration to various factors such as . . . square footage of the business . . . or any other reasonable factor relating to the benefit received". (Italics ours.) The ordinance did classify businesses within the Business Improvement Area into a number of classifications based upon type of use and square footage.[10] The statute also provides that "[t]he special assessments need not be imposed on different classes of business, as determined pursuant to RCW 35.87A.080, on the same basis or the same rate . . ."[11] The ordinance tracks the statute by classifying property pursuant to RCW

---

[10] Seattle City Ordinance 113015, § 3.

[11] RCW 35.87A.090.

35.87A.080 based upon type of use and square footage and then proceeds under RCW 35.87A.090 to apply different rates to the different classifications of property. The type of use (hotel, parking lot, retail business) is a reasonable factor relating to the benefits received from the maintenance and the marketing programs. Apportionment of special assessments based upon square footage of property has often been upheld.[12]

We conclude that the ordinance carefully follows the authorizing statute, does not exceed its delegated power and does not violate it.

ISSUE TWO.

CONCLUSION. The purposes delineated in the ordinance, for which the assessments in this case were levied, are a "benefit" to businesses within the meaning of article 7, section 9 of the Constitution of the State of Washington.

Const. art. 7, § 9 provides that property must be "benefited" in order to be subjected to special assessment. Petitioning store owners challenge the nature of the benefits afforded by the Business Improvement Area ordinance. They argue that because the benefits are derived from services rather than capital improvements they are not "benefits" within the meaning of Const. art. 7, § 9.[13]

■ The petitioning store owners have cited no case law to support the proposition that services cannot be considered "benefits" under article 7, section 9. They instead rely on language in *Heavens v. King Cy. Rural Library Dist.*, 66 Wn.2d 558, 563, 404 P.2d 453 (1965) which states that "[a]ll such assessments have one common element: they are for the construction of local improvements that are appurtenant to specific land and bring a benefit substantially more intense than is yielded to the rest of the municipality. The

---

[12]*See, e.g., Abbenhaus v. Yakima*, 89 Wn.2d 855, 576 P.2d 888 (1978); C. Rhyne, *Municipal Law* § 29–8, at 726 (1957); E. McQuillin § 38.47, at 185.

[13]Although many of the provisions of the ordinance do authorize services, others provide for more lasting improvements such as directional signing, landscaping and providing litter receptacles. Seattle City Ordinance 113015, § 2.

benefit to the land must be actual, physical and material and not merely speculative or conjectural." *Heavens,* however, does not lend support to the store owners' argument on this issue. *Heavens* involved the issue of whether a library was a *general* benefit to the entire municipality rather than a *special* benefit to a smaller area within the taxing jurisdiction; it did not address whether "benefits" were confined to permanent capital improvements.

Although some states do require that benefits for special assessments be permanent, Washington long ago declined to add this requirement.[14] *Ankeny v. Spokane,* 92 Wash. 549, 159 P. 806 (1916) rejected the landowners' argument that "local improvements" necessarily presuppose permanent physical additions. It cited with approval cases holding that street cleaning, removal of noxious weeds and the provision of power are of a special benefit to specific property. *Ankeny* also rejected the owners' argument that the assessment was void because it was of an ornamental nature. This court there held that in large part the character of the improvement rested in the discretion of the municipality.[15] Recent cases have allowed special assessments to be imposed for the purpose of revitalization and beautification of downtown areas.[16]

■ Whether RCW 35.87A and Seattle City Ordinance 113015 supply the proper kind of benefits for special assessment purposes is primarily a legislative question, at least so long as the assessment does not exceed the benefit to the property. A municipal corporation having the power

---

[14]*Ankeny v. Spokane,* 92 Wash. 549, 558, 159 P. 806 (1916); Trautman, *Assessments in Washington,* 40 Wash. L. Rev. 100, 101 (1965).

[15]*Ankeny,* at 560.

[16]*Time Oil Co. v. Port Angeles,* 42 Wn. App. 473, 712 P.2d 311 (1985) (upholding a special assessment for a beautification project intended to revitalize downtown Port Angeles); *Jarvill v. Eugene,* 289 Or. 157, 613 P.2d 1 (upholding special assessments for an economic project to revitalize downtown Eugene), *cert. denied,* 449 U.S. 1013 (1980).

to make local improvements by special assessment or taxation has the implied power to declare *what are local improvements,* where such a declaration is not made arbitrarily or unreasonably, or without reference to benefits.[17]

The store owners also rely upon *Heavens* for the proposition that benefits must be actual, physical and material and not merely speculative or conjectural.[18] The ordinance before us provides for decorating and beautifying public places in the retail core area, sponsoring public events, advertising, maintaining information and directional signing for pedestrians, improving public relations, sweeping and cleaning sidewalks, cleaning and erasing graffiti, maintaining flowers and greenery, providing and cleaning litter receptacles and providing additional security.[19] The trial court found that the Business Improvement Area had hired young people to sweep sidewalks in the Business Improvement Area every weekday, had conducted a series of programs involving advertising, and various activities, celebrations, and other events in the Business Improvement Area. Although not all of these services are permanent, they are actual, physical and material as opposed to speculative or conjectural. Special assessments have not been limited to essential services such as streets and utilities. In *Heavens,* both the majority and dissenting opinions agreed that a park provides a benefit which is amenable to special assessment. Aesthetic improvements can in the proper case thus provide a valid benefit for special assessment purposes.[20]

---

[17]14 E. McQuillin § 38.11, at 78. *See also* C. Rhyne § 29–3, at 717.

[18]*Heavens v. King Cy. Rural Library Dist.,* 66 Wn.2d 558, 563, 404 P.2d 453 (1965).

[19]Seattle City Ordinance 113015, § 2.

[20]*Ankeny v. Spokane, supra; Time Oil,* 42 Wn. App. at 473; 14 E. McQuillin § 38.11, at 77.

We conclude, therefore, that as a general proposition the determination of what kind of a benefit will support a special assessment is a decision best left to the legislative process so long as the assessment is for a local improvement and does not exceed the benefit to the property. Such benefits existed in this case.

ISSUE THREE.

CONCLUSION. The benefits delineated by the challenged ordinance are "special" benefits to the assessed property within the Business Improvement Area rather than benefits which inure to all property within the taxing jurisdiction.

It is the petitioning store owners' position that the benefits conferred in this case inured to the community at large rather than to the assessed property. It is, of course, essential that a special assessment be based upon an improvement which is local in character as opposed to general.[21] 14 E. McQuillin, *Municipal Corporations* § 38.11, at 77 (3d ed. 1987) explains this distinction:

> Laws recognize a distinction between public improvements which benefit the entire community, and those local in their nature which benefit particular real property or limited areas. The property benefited is usually required to pay the expense of the latter. A local improvement is a public improvement which, although it may incidentally benefit the public at large, is made primarily for the accommodation and convenience of the inhabitants of a particular locality, and which is of such a nature as to confer a special benefit upon the real property adjoining or near the improvement. On the other hand, if its primary purpose and effect are to benefit the public, it is not a local improvement, although it may incidentally benefit property in a particular locality.
>
> Whether an improvement is local is a question of fact rather than one of law, to be determined from its nature and object.

(Footnotes omitted.)

The petitioning store owners maintain that the improvements in the ordinance do not "specially benefit" the assessed property in that other businesses outside the Business Improvement Area also benefit as do downtown shoppers and workers. The store owners again rely on

---

[21]*Heavens v. King Cy. Rural Library Dist., supra.*

*Heavens* where it was held that a library did not specially benefit the property around the library, but rather generally benefited all the property in the taxing district and should, therefore, have been funded out of general taxes. The *Heavens* majority mentioned other improvements which should be funded by general taxation rather than by special assessment such as public auditoriums, war memorials, courthouses and public school buildings and the dissent added post offices to the list. Both the *Heavens* majority and dissent agreed that a public park could be the subject of a special assessment. The improvements delineated in the Business Improvement Area ordinance are distinguishable from a public library. The ordinance provides decorating, landscaping, cleaning, litter receptacles, security, advertising and promotion directly to the area within the Business Improvement Area.[22]

We have held repeatedly, and recently, that whether a property has been "specially" benefited by the improvement (as distinguished from providing a general benefit to the entire district) is ordinarily a question of fact.[23] In the case before us the trial court found that in order to carry out the common area maintenance program the Downtown Seattle Association had contracted with the YMCA for sidewalk cleaning in the Business Improvement Area. The trial court also found that while the advertising and availability of parking for extended hours had some spillover value to businesses outside the Business Improvement Area, the City had taken this into account and had apportioned the costs of programs between city funds and Business Improvement Area funds. The trial court further found that the City had charged the Business Improvement Area funds only so much of the overall costs as the Downtown Seattle Association deemed to reflect activities that

---

[22]Seattle City Ordinance 113015, § 2.

[23]*Bellevue Assocs. v. Bellevue*, 108 Wn.2d 671, 677, 741 P.2d 993 (1987); *In re Jones*, 52 Wn.2d 143, 146, 324 P.2d 259 (1958); *Hargreaves v. Mukilteo Water Dist.*, 43 Wn.2d 326, 333, 261 P.2d 122 (1953).

took place within, and advertising that benefited, the Business Improvement Area. Similarly, the trial court found that the stores did not show that the apportionment was unreasonable.

Apportionment between general tax dollars and special assessment money is not prohibited. RCW 35.87A.010(2) specifically allows cities to levy special assessments to pay in whole or in part for special benefits. Business Improvement Area funds were at times combined with funds from METRO or the City in order to subsidize a given project. The distribution of costs between a city and those properties which will be specially benefited is a discretionary legislative decision which the courts will set aside only upon a showing the City acted in an arbitrary and capricious manner or made the decision upon a fundamentally wrong basis.[24] The trial court specifically found that the apportionment between Business Improvement Area, City and METRO funds was not unreasonable.

Since the determination of whether an improvement is special or general is ordinarily a question of fact, and since the trial court determined that the assessments specially benefited property within the Business Improvement Area, we conclude the assessments were local in nature rather than general. The fact that improvements had some spillover benefit to the community at large does not change the character of special benefits in this case.

ISSUE FOUR.

CONCLUSION. The petitioning store owners had the burden of proving that the assessment against them substantially exceeded their benefit and failed to sustain their burden of proof in this regard.

*In re Jones*, 52 Wn.2d 143, 145, 324 P.2d 259 (1958) teaches that there are two distinct key questions in special assessment cases: (1) is the property specially benefited by

---

[24]*Citizens for Underground Equality v. Seattle*, 6 Wn. App. 338, 492 P.2d 1071, 51 A.L.R.3d 943 (1972). *See also* Trautman, *Assessments in Washington*, 40 Wash. L. Rev. 100, 128 (1965).

the local improvement?; and, if so, (2) how is this special benefit to be measured in terms of money for the purposes of assessment? The issue of whether the assessment substantially exceeded in amount the value of the special benefits inuring to the property is illustrative of the second question.[25] The petitioning store owners confuse these issues by arguing that the City has failed to show that the services provided specially benefited businesses within the Business Improvement Area by increasing their fair market value. This is essentially a challenge to the amount of assessment apportioned to each piece of property.[26]

■ In arguing that the City failed to demonstrate that the benefit conferred upon the store owners' businesses exceeded the amount of the assessments on those properties, petitioners do not recognize the presumptions applicable where the amount of a special assessment is challenged. A series of cases spell out the presumptions when property owners challenge the amount they have been assessed under a special assessment scheme.[27] The presumptions relevant to this case include: (1) the burden is upon the one challenging the assessment to prove its incorrectness as it is presumed the City has acted properly and legally; (2) the assessment is presumed to be a benefit; (3) the assessment is presumed to be no greater than the benefit; (4) it is presumed that an assessment is equal or ratable to an assessment upon other property similarly situated and that the assessment is fair; and (5) evidence of appraisal values and

---

[25]*In re Jones,* 52 Wn.2d 143, 147, 324 P.2d 259 (1958).

[26]The *Heavens* court recognized that it was *not* addressing the question of whether the assessment exceeded the benefit. (*Heavens* was addressing *Jones'* first question.) *Heavens* explained that it was not considering the excessiveness of the assessment, but rather whether *any* special assessment was permissible in order to finance a library. *Heavens,* 66 Wn.2d at 562.

[27]*Abbenhaus v. Yakima,* 89 Wn.2d 855, 860–61, 576 P.2d 888 (1978); *Hansen v. Local Imp. Dist. 335,* 54 Wn. App. 257, 773 P.2d 436 (1989); *In re Ron Inv. Co.,* 43 Wn. App. 860, 863, 719 P.2d 1353 (1986); *Time Oil Co. v. Port Angeles,* 42 Wn. App. 473, 479, 712 P.2d 311 (1985).

benefits is necessary to rebut these presumptions. Appellate review of such cases does not permit an independent evaluation of the merits.[28]

In *Abbenhaus v. Yakima,* 89 Wn.2d 855, 576 P.2d 888 (1978), this court held that an assessment based upon a small flat fee plus a charge on square footage of the property was presumptively valid and that the owner's claims of unfairness without evidence of appraisal values was inadequate to overcome the presumptions.[29] In *Time Oil Co. v. Port Angeles,* 42 Wn. App. 473, 712 P.2d 311 (1985), the City of Port Angeles established a local improvement district to beautify and revitalize its downtown. The *Time Oil* court first set out the *Abbenhaus* presumptions. It then observed that the property owners had attempted to present evidence on the fair market value of the property before and after the improvement, but as the ones challenging the special assessment had fallen short of establishing before and after values they therefore failed to overcome the *Abbenhaus* presumptions.

In the present case, only the City attempted to establish the value of the improvements to the assessed property. The petitioning store owners offered no evidence regarding values of their properties before and after the improvements. The trial court found that the 1986–87 program produced for each store owner an opportunity to benefit well in excess of the assessments. It specifically found that the properties had benefited from the sidewalk cleaning and from the opportunity to take advantage of the additional parking during extended hours and that the store owners had received the benefit of the increased pedestrian traffic in the downtown area from Business Improvement Area programs.

---

[28]*Hansen,* 54 Wn. App. at 260; *Bellevue Assocs.,* 108 Wn.2d at 674.

[29]*Abbenhaus,* 89 Wn.2d at 861.

It is presumed that a local improvement benefits property unless the challenging party produces competent evidence to the contrary. The burden of proof shifts to the City only after the challenging party presents expert appraisal evidence showing that the property would *not* be benefited by the improvement.[30] Thus petitioning store owners had the burden of establishing that the assessments exceeded the benefit but they did not present evidence on the issue. It follows that the petitioning store owners' claims, absent supporting evidence of appraisal values, are inadequate to overcome the presumption that the improvements were a benefit and that the assessments were no greater than the benefits.[31]

 Petitioners also argue that the trial court failed to find a "benefit" because it only found an "opportunity to benefit". First, this ignores the presumption of benefit, and secondly, courts have not required benefit measured only by the property's present use.[32] As Professor Trautman explains, "[p]roperty cannot be relieved from the burden of an assessment simply because its owner has seen fit to devote it to a use which presently may not be specifically benefited by the improvement." Trautman, *Assessments in Washington,* 40 Wash. L. Rev. 100, 119 (1965). Inherent in this concept of benefit based upon a different use of the property is the idea that "benefit" includes the "opportunity to benefit" from the improvement so long as the opportunity is not merely speculative.

Although petitioners argue that the benefit to their properties has not been calculated and the amount has not been determined, they fail to recognize that apportionment based upon square footage of property is a routinely upheld

[30]*Hansen,* 54 Wn. App. at 262.

[31]*See Abbenhaus v. Yakima, supra; Time Oil Co. v. Port Angeles, supra.*

[32]*Time Oil Co. v. Port Angeles, supra; In re Jones, supra.*

method of calculating a benefit.[33] Petitioners also exceed their argument on the ordinance's alleged unconstitutionality and instead embark into the issue of properness of and amount of assessments to which, of course, the presumptions previously discussed must attach.

ISSUE FIVE.

CONCLUSION. The assessment in this case does not violate the uniformity requirement of article 7, section 1 (amend. 14) of the Constitution of the State of Washington.

Const. art. 7, § 1 (amend. 14)[34] in relevant part provides:

> All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only.

Const. art. 7, § 9 in relevant part provides:

> For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same.

■ The assessments in this case would violate Const. art. 7, § 1 (amend. 14) and Const. art. 7, § 9 if they were sought to be imposed by way of general taxes. There is no such contention, however. The statutory scheme and the ordinance both create a structure imposing assessments on property which is specially benefited.[35] Special assessments for local improvements are not deemed taxes within the uniformity provisions of the state constitution.[36]

---

[33]See, e.g., Hansen v. Local Imp. Dist. 335, supra; Abbenhaus, 89 Wn.2d at 861; Hargreaves, 43 Wn.2d at 333 (area and distance acceptable method); Time Oil, 42 Wn. App. at 477 n.1 (defines a square footage method); C. Rhyne, Municipal Law § 29–8, at 726 (1957); Trautman, 40 Wash. L. Rev. at 122; 14 E. McQuillin, Municipal Corporations § 38.47, at 185 (3d rev. ed. 1987).

[34]Const. art. 7, § 1 (amend. 14) was subsequently amended by the passage of House Joint Resolution 4222 on November 8, 1988, without change to relevant language. Const. art. 7, § 1 (amend. 81).

[35]RCW 35.87A.010(2); Seattle City Ordinance 113015.

[36]Berglund v. Tacoma, 70 Wn.2d 475, 423 P.2d 922 (1967); Heavens v. King Cy. Rural Library Dist., 66 Wn.2d 558, 563, 404 P.2d 453 (1965); Citizens for Underground Equality v. Seattle, supra; Trautman, 40 Wash. L. Rev. at 103.

Therefore, since we sustain this ordinance and the assessments in question based upon the law relating to special assessments, they do not violate the uniformity provisions of the state constitution.

ISSUE SIX.

CONCLUSION. We conclude that the Seattle city ordinance does not violate either federal or state constitutional mandates of equal protection.

The federal constitution provides that the states shall not "deny to any person within its jurisdiction the equal protection of the laws."[37] The Constitution of the State of Washington provides that "[n]o law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."[38] Ordinarily inconsistency with our "privileges and immunities" clause implies inconsistency with the federal equal protection clause.[39]

The petitioning store owners argue that because the ordinance assesses only two floors of a "major multi level retail store with more than 100,000 square feet under single ownership", while at the same time assessing all floors of a smaller retailer, it violates constitutional equal protection requirements.[40]

■ In Washington, absent involvement of fundamental rights or suspect classifications, equal protection challenges to tax laws are reviewed with a minimum level of scru-

---

[37]U.S. Const. amend. 14, § 1.

[38]Const. art. 1, § 12.

[39]*Cosro, Inc. v. Liquor Control Bd.*, 107 Wn.2d 754, 759, 733 P.2d 539 (1987); *Petersen v. State*, 100 Wn.2d 421, 444, 671 P.2d 230 (1983).

[40]It is relevant to note that under the ordinance herein, each retailer, regardless of size, has one vote on the advisory board of ratepayers and that ground floor space is assessed at a higher rate than other floors.

tiny.[41] Economic nonsuspect classifications in tax laws are subject to minimal scrutiny in federal equal protection challenges as well.[42] Under minimum scrutiny, a statute is presumed constitutional and the party challenging it has the heavy burden of showing there is no reasonable basis for the classification or that the classification is contrary to the purpose of the legislation.[43]

Legislative bodies have extensive authority to make classifications for purposes of legislation and even broader discretion in making classifications for taxation than it has for regulation.[44] A city council has the same powers of classification as the Legislature.[45] In a revenue statute, the challenger bears the burden of showing there is no reasonable basis for the questioned classification, the test being whether any state of facts can be conceived that would sustain the classification.[46]

To comply with Const. art. 1, § 12, a legislative classification must meet three requirements: (1) the legislation must apply alike to all persons within a designated class; (2) there must be reasonable grounds for distinguishing between those who fall within the class and those who

[41]*National Can Corp. v. Department of Rev.*, 109 Wn.2d 878, 749 P.2d 1286, *appeal dismissed, cert. denied*, 486 U.S. 1040 (1988); *Cosro*, 107 Wn.2d at 759–60.

[42]*Cosro*, 107 Wn.2d at 760 (citing *Weissinger v. White*, 733 F.2d 802, 806 (11th Cir. 1984) and *Robinson Protective Alarm Co. v. Philadelphia*, 581 F.2d 371, 378 n.15 (3d Cir. 1978)).

[43]*Petersen v. State*, 100 Wn.2d at 444.

[44]*Sonitrol Northwest, Inc. v. Seattle*, 84 Wn.2d 588, 590–91, 528 P.2d 474 (1974).

[45]*Sonitrol*, 84 Wn.2d at 594.

[46]*United Parcel Serv., Inc. v. Department of Rev.*, 102 Wn.2d 355, 687 P.2d 186 (1984); *Hemphill v. Tax Comm'n*, 65 Wn.2d 889, 400 P.2d 297 (1965), *appeal dismissed*, 383 U.S. 103, 15 L. Ed. 2d 615, 86 S. Ct. 716 (1966).

do not; and (3) the disparity in treatment must be germane to the object of the laws in which it appears.[47]

In applying these principles to the facts of this case, the petitioners have not established an unreasonable and discriminatory classification between large department stores and smaller individual retailers. (1) There is no allegation that the ordinance fails to apply alike to all those within each classification of property. (2) A number of facts can be perceived which would sustain the classification of large department stores and individual retailers. The city council may well have sought to establish a democratic decision-making scheme where smaller retailers have a fairly equal voice with larger stores. In fact, this is the situation under this ordinance since all businesses have but one vote on the advisory board regardless of their size or the amount of their assessment. The City points out that large department stores are also inherently different from small retailers in that they create their own shopping environment and benefit less from external expenditures; they advertise extensively in newspapers on their own as part of a larger corporate identity and have their own promotional activities so that Business Improvement Area programs are supplemental and add less relative benefit; furthermore, that downtown department stores having outlying shopping mall branches are more likely to merely be diverting dollars rather than creating them when they succeed in encouraging shoppers to shop in the city core; and additionally, setting a square footage assessment limit by floor encourages a broader base of department store support for such Parking and Business Improvement Area programs. (3) The objective of the statute is to aid general economic development and facilitate merchant and business cooperation which assists trade by beautifying, cleaning, providing security and promoting the inner city. The rationale set forth above which offers reasonable grounds for the classification of businesses is germane to the objective of this law. The

[47]*United Parcel Serv.*, 102 Wn.2d at 367; *Sonitrol*, 84 Wn.2d at 589–90.

petitioning store owners assert that the smaller businesses are forced to provide more than their fair share of the burden. However, they have offered no evidence to substantiate this claim.[48] In short, the challengers have not sustained their heavy burden of overcoming the presumption of the ordinance's constitutionality.

Having decided the case on the aforesaid grounds, it is unnecessary to reach the municipality's argument regarding "charges for special services".

For the foregoing reasons, we conclude that the Municipal Court and the Superior Court correctly decided that Seattle City Ordinance 113015 properly follows RCW 35.87A and is constitutional.

Affirmed.

CALLOW, C.J., UTTER, BRACHTENBACH, DOLLIVER, DURHAM, and SMITH, JJ., and CUNNINGHAM and PEARSON, JJ. Pro Tem., concur.

---

[48]The record reflects that in point of fact, two of the three department stores in the Seattle Business Improvement Area pay the maximum monetary assessments allowed in the ordinance.